Freddie L. PERRY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17846.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 4, 1964.

Decided July 31, 1964.

Mr. Russell Morton Brown (appointed by the District Court), Washington, D. C., for appellant.

Mr. Maurice C. Goodpasture (appointed by the District Court), Washington, D. C., also entered an appearance for appellant.

Mr. David Epstein, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker, Asst. U. S. Atty., and Frederick G. Smithson, Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellee.

Messrs. Gerald A. Messerman and Lawrence A. Schaffner, Asst. U. S. Attys., also entered appearances for appellee.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and FAHY, Circuit Judge.

EDGERTON, Senior Circuit Judge.

Freddie Lee Perry appeals from a conviction of possessing contraband narcotics. 21 U.S.C. § 174, 26 U.S.C. § 4704 (a). On January 25, 1962 an informer telephoned police that Perry, his wife, and a cousin were selling narcotics near 14th and U Streets. The police went there and saw, across a crowded street, that in walking some twelve blocks the trio stopped several times to talk to people and that these included known addicts. Twice an officer saw an "exchange of something" with a known addict.[1]

---

1. When pressed, the officer said first that one exchange "looked like money" and then that it was money. He did not re- member whether appellant took part in this exchange.

The police arrested appellant and his companions. On the way to the police station an officer saw Perry drop a glassine bag on the floor of the wagon. It proved to contain heroin. At the station the arresting officer filled out an "addict form" which Perry signed. It contained admissions that he dropped the narcotics and that he had a 12 capsule a day habit. The form was introduced in evidence at his trial.

At appellant's trial, his counsel asked the police how the informer was paid, how he usually gave his tips, whether he was an addict, and what his relationship to the arresting officer was. The court sustained the prosecutor's objections. The defense was allowed to bring out, without further detail, that the police had received "about three" other tips in three months from this informer. On re-direct an officer testified that these previous tips had "proven reliable". But the defense was not allowed to inquire about the nature and circumstances of these previous tips, what the informer's compensation was, or whether he was an addict.[2]

## I

■ Seeing Perry "exchange * * * something" with a known addict, though not "totally innocuous",[3] was not probable cause for Perry's arrest. We must therefore consider the informer's role.

Aguilar v. Texas, 378 U.S. 108, 115–116, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723,

729 (1964), held that an affidavit on which a magistrate issued a search warrant "did not provide a sufficient basis for a finding of probable cause and that the evidence obtained as a result of the search warrant was inadmissible in petitioner's trial." The Court said that when an affidavit is "based on hearsay information * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, * * * was 'credible' or his information 'reliable.'" 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. (Emphasis added.) Though those words are not directly applicable to this case, since this case turns on a police officer's determination of probable cause and not a magistrate's determination, the Court's words suggest that in such a case as this the trial court should permit inquiry into the two named sorts of "underlying circumstances". The Court said: "when a search is based upon a magistrate's, rather than a police officer's determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant'"; citing Jones v. United States, *supra*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697.

2. "[V]ery little attention has been paid to the veracity of drug addicts who are frequently used as stool pigeons in narcotics cases. They frequently are 'monstrous liars'. Menninger, *The Human Mind*, 148 (3d ed. 1949). * * * 2 WIGMORE, Evidence § 500 (3d ed. 1940)." Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs*, 60 YALE L.J. 1091, 1121, n. 4 (1951).

*Cf.* United States v. Ginsburg, 96 F. 2d 882 (7th Cir.), cert. denied, 305 U.S. 620, 59 S.Ct. 81, 83 L.Ed. 396 (1938); United States v. Lindenfield, 142 F.2d 829 (2d Cir. 1944), cert. denied, 323 U.S. 761, 65 S.Ct. 89, 89 L.Ed. 609 (1945).

3. In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), a previously reliable informer's tip had been corroborated in detail by "matters in themselves totally innocuous". (Jones v. United States, 362 U.S. 257, 269–270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). Probable cause was found. But the information on which the informer based his tip, the details of his previous tips, the basis of police belief in his reliability, and even his identity, were shown at Draper's trial. See Draper v. United States, 248 F.2d 295, 297 (10th Cir. 1957); 146 F.Supp. 689 (D.Colo.1956).

At appellant's trial no questions were asked about the "underlying circumstances" from which the informant concluded that the Perrys were selling narcotics.[4] If the record contained only the policemen's testimony to their own observations and their statements that the informer was reliable, a finding of probable cause might perhaps be sustained, but the record shows that the court prevented the defense from inquiring into the "underlying circumstances from which the officers concluded that the informant * * * was 'credible'." The questions the defense sought to ask might have elicited information that would have affected the trial court's decision on the question of probable cause.[5] And if the questions had been permitted, the defense might well have gone on to the other line of inquiry suggested in *Aguilar*, namely, the basis for the informer's belief. Where, as here, the informer's reliability is relevant to the exercise of the court's discretion, we think the court should permit inquiry into both kinds of "underlying circumstances" to which *Aguilar* refers.

## II

When Perry was arrested he was taken directly to the narcotics squad office at police headquarters. The arresting officer testified that Perry asked to see a lawyer but that the line-up sheet, booking, and "addict form" had to be completed first. In addition to routine questions such as name, aliases, and parents, the addict form asks questions about addiction, such as how many capsules are taken and how they are taken. Under a heading "Remarks (including a brief summary of the circumstances of the arrest)", this was written on appellant's form: "On the way to police headquarters on Wagon No. 2 he took from his right overcoat pocket a cellophane bag and dropped it on the floor of the wagon. This bag was recovered immediately by Detective Joseph W. Somerville and was found to contain 9 gelatine capsules containing a white powder. Subject admitted they were his and stated they were for his own use." Perry signed the form under the words "I have read both sides of this sheet and find the statements herein to be true."

Although the statement written on the addict form seems to imply that Perry admitted ownership while he was in the wagon on the way to headquarters, this implication cannot be intended, because the officer testified that Perry then denied he dropped the bag. His admission of ownership came later, in response to questioning at headquarters while the form was being filled out, and therefore was not a "threshold confession". The form was completed about an hour and a half after Perry was arrested.

Though a policeman testified that use of the addict form is common and may help other agencies that deal with addicts, and the police keep a list of addicts, a form filled out as appellant's was is a confession. The "ordinary administrative steps required to bring a suspect before the nearest available magistrate" do not include the obtaining and record-

---

4. There is some indication that the police did not investigate or know of any such "underlying circumstances". "[Defense counsel]: And in this telephone conversation, you heard the informant state who was calling, and you accepted that as true, is that correct? [Policeman]: This is correct. [Defense counsel]: And that was the basis upon which you rested in accepting confidential information, is that correct? [Policeman]: This is correct."

5. In *Jones* the Court sustained a warrant based on an officer's affidavit that an informant had previously proved reliable and that his information was corroborated by "other sources"; yet even in that case the Court said the "[c]ommissioner * * * might have found the affidavit insufficient and withheld his warrant." 362 U.S. at 271, 80 S.Ct. at 736.

In Walker v. United States, U.S.App. D.C., 327 F.2d 597 (1963), rehearing *in banc* denied January 28, 1964, probable cause to issue a search warrant was found in an affidavit that two previously reliable informers had given the pertinent information and a showing that their statements were "reasonably corroborated by other matters within the officer's knowledge."

ing of confessions. Since the confession was obtained during unnecessary delay in presenting appellant before a magistrate, it should have been excluded under the *Mallory* rule, Mallory v. United States, 354 U.S. 449, 453, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The police may not take a suspect to a station "in order to carry out a process of inquiry that lends itself * * * to eliciting damaging statements to support the arrest and ultimately his guilt." *Id.* at 454, 77 S.Ct. at 1359.[6]

The government does not deny that the *Mallory* rule was violated,[7] but says the point was not raised at trial and cites White v. United States, 114 U.S.App.D.C. 238, 314 F.2d 243 (1962), and Williams v. United States, 113 U.S.App.D.C. 7, 303 F.2d 772, cert. denied, 369 U.S. 875, 82 S.Ct. 1145, 8 L.Ed.2d 277 (1962). These cases do not dispose of the matter. In each of them this court weighed the circumstances in deciding whether to invoke the plain error rule, 52(b), F.R. CRIM.P., when the *Mallory* point had not been raised at trial. And in Lawson v. United States, 101 U.S.App.D.C. 332, 248 F.2d 654 (1957), we referred to "our discretion" in such a case. In the present case we think the *Mallory* point was effectively if indirectly called to the court's attention. Cf. Kramer v. United States, 115 U.S.App.D.C. 50, 317 F.2d 114 (1963).

When the addict form was offered in evidence, defense counsel objected "to any introduction of any document * * until it is shown that the Defendant was advised of his constitutional rights, was notified that he did not have to make a statement, that he was advised of his right to counsel, of his right to be brought speedily before a committing magistrate". Shortly after this the following colloquy occurred: "THE COURT: What about the question of whether or not there had been any lapse of time between the time of his arrest— MR. SMITHSON [the prosecutor]: At the time of his arrest, he was taken into custody, and this statement was made up at the Narcotics Squad to which he was immediately taken."

The following colloquy occurred at a hearing in the absence of the jury on the circumstances in which the form was executed: "MR. BROWN [defense counsel]: I will object, of course, to the introduction of this statement in evidence on the ground that the Defendant was not advised of his legal rights before he made the statement, he was not given an opportunity to have counsel for his guidance and assistance. THE COURT: What do you say, Mr. Smithson? [The prosecutor]: I think, Your Honor, this even beats the test in Naples[8] * * * This was an arrest on probable cause, a statement made in the course of normal procedure. Your Honor will recall the language of the Mallory Rule, where in the course of preparing, in their administrative short processes, they secure such statements, that they would be admissible. This is the same type of situation."

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

6. It might well have been found that appellant's statements were not voluntary. On the form is written: "Subject states that he is getting sick and need [sic] to go to the hospital for the cure". At trial Perry denied saying this but his denial is not conclusive. If an addict confesses because it appears to be the only way to get treatment for withdrawal pains, the confession is not voluntary.

7. The point was not discussed in the briefs. At oral argument the court asked the parties to submit memoranda on it.

8. Naples v. United States, 113 U.S.App. D.C. 281, 307 F.2d 618 (1962) (*in banc*).