**Sharland Reeves GASTON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 41805.**

Court of Criminal Appeals of Texas.

March 12, 1969.

Roy Q. Minton, Austin, for appellant.

Tom Blackwell, Dist. Atty., Dain Whitworth, Asst. Dist. Atty., Austin, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The appeal is from a conviction for the unlawful possession of marihuana, a narcotic drug (Art. 725b Vernon's Ann.P.C.).

Trial was before a jury on a plea of not guilty. The jury found appellant guilty. Appellant withdrew her request that the jury assess the punishment and elected to have the court assess the punishment and pass on her application for probation. Her punishment was assessed by the court at nine years in the Texas Department of Corrections, and probation was granted. She appeals from such conviction. (Art. 42.12 (8) and Art. 44.08(b) Vernon's Ann.C.C.P.)

The state's evidence reflects that on December 15, 1967, Harvey E. Gann, Captain in charge of Special Services, vice and narcotics detail of the Austin Police Department since 1955, accompanied by Sergeant Investigators Robert W. Jones, E. L. Conner and Albert Hersom, of said detail, and by Texas Liquor Control Board Agent Bert Lively, went to an apartment occupied and under the control of appellant and her twin sister to execute a search warrant issued by Justice of the Peace Frank W. McBee, at 9:10 P.M. on December 14, 1967.

Captain Gann testified that they arrived at the entrance to the apartment about 8:40 P.M. and after they knocked several times appellant opened the door and was given a copy of the search warrant.

Captain Gann further testified that he detected a heavy odor or marihuana smoke throughout the house, and that appellant was in his opinion under the influence of marihuana.

There were nine people in the apartment when the officers began their search. Six more arrived during the search.

A quantity of marihuana was found in the apartment and ashes or traces of burned marihuana were found in a pipe and tube through which marihuana was being smoked.

Appellant testified that she saw and smelled· marihuana being smoked in the apartment but denied any connection with or participation in such smoking, or any knowledge of how the marihuana cigarettes and bags and a bottle containing marihuana got into the apartment or who brought them there.

The sole ground of error is:

"The court erred in admitting the marijuana into evidence inasmuch as it was seized pursuant to the execution of a search warrant based upon an affidavit which failed to state probable cause."

The affidavit for search warrant reads:

"The State of Texas }
County of Travis

"Before me, the undersigned authority, on this day personally appeared the undersigned affiants, who being by me severally sworn, upon their oaths state, that: A certain building, house and place, occupied and used as a private residence, located in Austin, Travis County, Texas described as white frame two story house located at 608 East 19½ Street, Austin, Travis County, Texas, with the bottom apartment, which is to be searched, facing and being entered from 19½ Street, and being the building, house or place of Sharland Elizabeth Reeves, W-F approximately 20, 5' 6", brown hair with bangs, blue eyes and other person or persons unknown to affiants by name,

identity or description, is a place where we each have reason to believe and do believe that said party so occupying and using, as a private residence, the said building, house and place has in her possession therein narcotic drugs, as that term is defined by law, and contrary to the provisions of law, and for the purpose of the unlawful sale thereof, and where such narcotic drugs are unlawfully sold; that on or about the 14th day of December, A.D., 1967, Affiants have received information from a credible and reliable informant that Sharland Elizabeth Reeves is keeping and using marijuana at her residence which is located at 608 East 19½ Street, Austin, Travis County, Texas. The informant has been present on numerous occasions when the subject was using and under the influence of marijuana and has seen the subject dispense marijuana to other guests in her residence. In most instances the marijuana is smoked by using a water type smoking pipe and this instrument is kept in the back or North bedroom up on a shelf, which is to the right as you enter the bedroom. Also, the marijuana is kept on this shelf a majority of the time. The informant further states that there have been several large marijuana parties thrown by Sharland Elizabeth Reeves within the past few weeks, at which time Sharland Elizabeth Reeves furnished the marijuana. The informant states that she has seen marijuana in Sharland Elizabeth Reeves' possession within the past two days.

(s) Robert Jones, Affiant
(s) E. L. Conner, Affiant

"Subscribed and sworn to before me, by the within named affiants, on this the 14th day of December, A.D. 1967.

(s) Frank W. McBee
Justice of the Peace, Precinct No. 5, Travis County, Texas." [1]

1. Appellant Sharland Reeves married Robert Gaston prior to the trial.

The affidvait was made a part of the search warrant issued by the magistrate which recites:

" * * * whereas, the particular grounds and probable cause for this warrant to issue are set forth in the said affidavit, which is made a part hereof, upon examination of the same by me, I am satisfied that the grounds exist and that probable cause is shown, and I believe in its existence and do so hereby find."

Appellant's counsel ably presents by brief and oral argument the contention that the affidvait is insufficient under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723.

The precise contention is that the affidavit is insufficient in that it fails to inform the issuing magistrate of the facts and circumstances upon which the affiants based their conclusion that the informant, who is not named, was "reliable and credible."

A like contention, also presented ably, was overruled by this court in Perez v. State, 394 S.W.2d 797, and in Ex parte Gomez, 389 S.W.2d 308, cert. denied, 386 U.S. 937, 87 S.Ct. 958, 17 L.Ed.2d 810, and by the Federal District Court and Circuit Court of Appeals, 5th Circuit. Gomez v. Beto, 402 F.2d 766.

The affidavit here attacked reflects a much more detailed report of the unnamed informant than the affidavit in the cases cited, or any affidavit for search warrant which has been held insufficient by the Supreme Court to show probable cause.[2]

We are not here confronted with a question of prejudice from the failure to disclose the name of the informer.

The record reflects that on cross-examination of state's rebuttal witness Constance Groos defense counsel elicited from her testimony that the water pipe belonged to John Lomax, and she had so previously informed the police; that she talked to the police prior to the raid. In addition to her testimony on direct examination, Mrs. Groos testified in part:

"Q. You were talking to the police all the time; is that correct?

"A. Yes.

"Q. And giving them information about violation of narcotics laws, or anything else that you observed; is that correct?

"A. Yes.

   *       *       *       *       *       *

"Q. Now, were you with what you have called the establishment on several occasions during the two or three weeks that you were operating as an undercover agent?

"A. I wasn't operating as an undercover agent.

"Q. During the two or three weeks that you were giving information to the police?

"A. Yes.

"Q. At different locations, I suppose?

"A. No, at one main location, the one mentioned.

   *       *       *       *       *       *

"Q. You think the police arrived—

"A. The police arrived around eight thirty.

"Q. All right. How long had you all been smoking marihuana prior to the time the police arrived, counting

2. The affidavit of the single affiant in Perez v. State, reciting his belief that the place to be searched was a place where narcotic drugs and paraphernalia were unlawfully possessed, reads: " * * * such belief of the affiant is founded upon the following information: That on May 20, 1964, the affiant received information from a reliable and credible person whose identity cannot be revealed for security reasons, that he, the said reliable and credible person did see narcotic drugs and narcotic paraphernalia unlawfully possessed at 730 Florida St. on May 20, 1964 by Richard Rivera. The affidant has good reason to believe and does believe that narcotic drugs and narcotic paraphernalia are unlawfully possessed at 730 Florida St."

the time that the pipe was out of order?

"A. About forty minutes.

"Q. All right. Your statement that you were obliged to take your turn at the pipe, do you mean by that that you would be due for suspicion, or wouldn't be a part of the group, if you didn't take your turn?

"A. That is correct.

"Q. So you felt compelled to do so?

"A. Yes.

"Q. Even though you were not doing it for pleasure, or whatever sensation you might get; is that correct?

"A. I don't understand that question.

"Q. I am sort of asking if you were enjoying your work, or were you just smoking marihuana because you thought you had to?

"A. Well, I was not working at the time.

"Q. What were you doing—you were giving information to the police, but you were just associating with this group and enjoying yourself at the same time?

"A. I had associated with the majority of this group for two years now, and they had not smoked marihuana to my knowledge until May of last year, of '67."

Aguilar v. Texas, supra, and later cases, including Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, decided since this appeal was submitted, do not convince us that appellant's ground of error should be sustained or that Perez v. State or Ex parte Gomez, supra, should be overruled.

We find the detailed information obtained first hand, as an eye witness or participant, sufficient to satisfy the magistrate that the information was gained in a reliable way and was reliable, is also sufficient, when coupled with the affiants' conclusions, to support the magistrate's

finding that the informant was reliable and credible.

Appellant's ground of error is overruled.

The judgment is affirmed.

DOUGLAS, J., not participating.

ONION, Judge (concurring).

I find myself unable to agree fully with the majority, though I am in the unenviable position of having been the trial judge in Perez v. State, Tex.Cr.App., 394 S.W.2d 797 and in Ex parte Gomez, Tex.Cr.App., 389 S.W.2d 380, cert. denied, 1967, 386 U.S. 937, 87 S.Ct. 958, 17 L.Ed.2d 810, upon which the majority relies so strongly. See now Gomez v. Beto (5th Cir.), 402 F.2d 766.

Nevertheless, I am fearful that the majority has disposed of the question without clearly delineating just how the affidavit here involved meets both ends of the Aguilar test (Aguilar v. Texas, 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509), particularly in light of the supposedly explication of Aguilar in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

It is difficult to determine whether the majority is holding that the claimed personal observations of an unnamed informant are sufficient "underlying circumstances" standing alone to establish probable cause and to satisfy both prongs of the Aguilar test or whether the Court is saying that personal observations are sufficient not only to satisfy the first half of the Aguilar test, but if detailed and incriminating enough (to a degree not specified) may overflow to supply the unsupported conclusion of the affiant that the informer is credible or his information reliable which would otherwise be deficient in view of the latter half of the Aguilar rule.

My difficulty in following the majority's reasoning may stem from the rather general approach utilized, reminiscent of the approaches used in Perez and Gomez. The

affidavit is set out, the results of the search described (which cannot be considered in determining probable cause), the affidavit held to be a more detailed report of the informant than in Gomez or Perez, the testimony of the *supposed* [1] informer at the trial is quoted from as if it can be used to support the probable cause needed (which it cannot), and then apparently upon such confirmation that the information was obtained firsthand, the majority reaches the conclusion stated with a bow to the printed form finding of probable cause.[2]

Nowhere is the rule in Aguilar stated so that the uninformed reader can readily determine the question presented by this appeal. Only in a most general way does the majority opinion come to grips with appellant's specific contention.

We should not forget that the traditional function of an appellate court opinion to furnish precedent and guidelines to the bench and bar has had added to it a new dimension, at least in criminal cases. Law enforcement officers and agencies have a vested interest in the appellate opinion in this day and age of change in the approach to criminal prosecution.

None of this could be truer than in the particular field with which we deal in the case at bar. We must, therefore, to the very best of our ability set guidelines for all concerned in this sensitive developing and difficult area of the law.

The precise problem apparently presented by this appeal and argued by both parties involves the nature of the showing that must be made in the ex parte proceedings before a magistrate to justify his issuance of a search warrant *where the probable cause is based solely upon hearsay unaided by any independent corroboration.* I shall begin my discussion at least upon this assumption. Specifically, relying upon the Fourth Amendment, United States Constitution; Art. 1, Sec. 9, Texas Constitution, Vernon's Ann.St. Art. 18.01, V.A.C.C.P. and the Aguilar decision, appellant urges that the affidavit was insufficient in that it failed to inform the reviewing or issuing magistrate of the facts and circumstances upon which the affiants based their conclusion that the unnamed informant was "reliable and credible," thus failing the latter half of the Aguilar test.

Under the Fourth Amendment of the United States Constitution a search warrant may not be issued in the absence of the showing of probable cause, supported by oath or affirmation. In making such determination it is of no consequence that the affiant or affiants might have had additional information which could have been given to the issuing magistrate. "It is elementary that in passing upon the validity of the warrant, the reviewing court may consider *only* information brought to the magistrate's attention." Aguilar v. Texas, supra. 378 U.S. at p. 109, n. 1, 84 S.Ct. at p. 1511, 12 L.Ed.2d 723 (emphasis in original), citing Giordenello v.

1. There is nothing in the record before us to establish that Constance Groos was in fact the informer referred to in the affidavit. None of the affiant-officers testified in the case at bar. She did not relate that it was her information that was utilized in the affidavit. In a companion case, Johnson v. State, 440 S.W.2d 308 (No. 41,750) in which this same affidavit and search warrant were involved, affiant-officer Conner testified the information received from the informer used, whose identity he did not reveal, had also come from other people—"basically the same facts"; that the informer used was "lawfully occupied" to

his knowledge. The utilization of Constance Groos' testimony by the majority is rendered therefore all the more surprising.

2. The majority quoted from the one page printed form of the affidavit-search warrant as to the magistrate's finding of probable cause which the magistrate (in the companion case of Johnson v. State, 440 S.W.2d 308 (No. 41,750) testified was filled out and "prepared" before it was presented to him. Such finding will be present in every case where the printed form is utilized.

United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503; 79 C.J.S. Searches and Seizures § 74, p. 872. See also United States v. Roth, 391 F.2d 507 (7th Cir.).

While it has been held that everything brought to the magistrate's attention need not be contained in the affidavit or application for search warrant, State v. Oliveri, 156 N.W.2d 688 (Ia.1968) this is not the rule in Texas.

Our State Constitution provides that no search warrant shall issue "without probable cause, supported by oath or affirmation." Further, Article 18.01, supra, provides "[n]o search warrant shall issue for any purpose in this State unless a sworn complaint therefor shall first be filed with the issuing magistrate setting forth sufficient facts to satisfy the magistrate that probable cause does in fact exist for its issuance."[3] See also Articles 18.02, 18.21, V.A.C.C.P. Considering these authorities or their forerunners, this Court in Hall v. State, 394 S.W.2d 659, said: "The conversation between the magistrate and the two officers, which was not shown to have been sworn to under oath, could not be the basis for the determination of probable cause for the issuance of the [search] warrant."

Therefore, in determining the sufficiency of the affidavit in question to reflect probable cause the courts are bound by the four corners thereof. The record does not reveal and I do not understand the prosecution to urge that there was additional information actually given under

oath to the magistrate which would have been sufficient to reflect probable cause.[4] "The test is not merely whether probable cause existed for the issuance of the search warrant, but whether under all the factual circumstances disclosed to the magistrate they were sufficient for him to determine and make a finding of the existence of probable cause." State v. Cadigan, 249 A.2d 750 (Maine Supreme Court 1/9/69).

It is now well established that the Fourth Amendment prescriptions are to be enforced against the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R. 2d 933, and that the standard of probable cause for obtaining a search warrant under state laws is to be measured by the same constitutional standard which governs the determination of probable cause under federal law. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Aguilar v. Texas, supra; Taylor v. State, Tex.Cr. App., 421 S.W.2d 403. See also Article 38.23, V.A.C.C.P.

With that background appellant's specific complaint must be considered.

Despite earlier cases to the contrary, it is now settled that at least in federal court hearsay may provide the probable cause necessary for the issuance of the search warrant where a substantial basis for crediting the hearsay is presented. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233; 10 A.L.R.3d, § 3, pp. 359, 364. The same rule prevails in Texas (Seale v. State, 114

---

3. It is interesting to observe that the sentence quoted was made a part of Article 18.01 (former Article 304), supra, as a direct result of the Aguilar decision. See Interpretative and Special Commentaries to said article. Vernon's Anno.C. C.P.

4. Certainly it is well established that probable cause for the issuance of a search warrant cannot be bolstered by the results or fruits of a subsequent search. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Henry v. United States, 361 U.S. 98, 80

S.Ct. 168, 4 L.Ed.2d 134; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; State v. Scanlon, 84 N.J. Super. 427, 202 A.2d 448; State v. Campbell, 97 N.J.Super. 435, 235 A.2d 235. In United States ex rel. Rogers v. Warden of Attica State Prison (2nd Cir.), 381 F.2d 209, 221, it was said: "* * * And certainly it is too late to advocate that a search can be justified by the fruit it produces, for if that is the law the discredited maxim that the end justifies the means will be given official sanction."

Tex.Cr.R. 521, 26 S.W.2d 275, reversed on other grounds) and the majority of the states. 10 A.L.R.3d, § 3, supra. The importance of presenting in an affidavit for a search warrant a substantial basis upon which any hearsay may be credited was emphasized in Aguilar.

There the Court wrote:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' Giordenello v. United States, supra, 357 U.S. at 486,

78 S.Ct. at 1250, 2 L.Ed.2d at 1509; Johnson v. United States, supra, 333 U.S. at 14, 68 S.Ct. at 369, 92 L.Ed. at 440, or, as in this case, by an unidentified informant." [5] (emphasis supplied)

Thus while it is recognized that hearsay alone may be sufficient to establish probable cause, it must be shored up by additional support (underlying circumstances) before there can be a finding of probable cause.[6]

Only recently in Spinelli v. United States, supra, the rule was referred to as "Aguilar's two pronged test."[7] There the majority, speaking through Mr. Justice Harlan, and referring to Aguilar, said: " * * * the tests it establishes were designed to implement the long-standing principle that probable cause must be determined by a 'neutral and detached magistrate' and not by the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436."

In 53 California Law Review 840, the Supreme Court's Aguilar rule where sufficient corroboration is absent was discussed. There it was said:

" * * * the 'underlying circumstances' of *both* the informer's conclusion of guilt and the officer's conclusion that

5. A number of law review articles have discussed the Aguilar holding. See 10 South Texas Law Journal 92, 105 (1968); 21 Southwestern L.J. 242 (1967); 17 Baylor Law Review 443 (1965); 22 Southwestern L.J. 211 (1968).

6. If Aguilar's two pronged test is met, then probable cause can be established by hearsay alone. It should be observed, however, that an affidavit deficient in these respects is not necessarily inadequate to support a search warrant. Other facts and circumstances may be attested (in the affidavit) which will supply the evidence of probable cause needed to support the search warrant.
   Aguilar itself recognized that if the bald conclusions of the affidavit there had been supplemented by "the fact and

results of * * * a surveillance * * * this would, of course, present an entirely different case." 378 U.S. at 109, n. 1, 84 S.Ct. at 1511. This does not mean that a surveillance or independent police investigation or work will always save an affidavit which falls short of the Aguilar standards. See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

7. Earlier it had been described as a "double barreled requirement." United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209, 217 (2nd Cir.). In Perry v. United States, 118 U.S.App.D.C. 360, 336 F.2d 748, the Court mentions "both kinds of 'underlying circumstances' to which Aguilar refers."

the informer is reliable must be put forth before the reviewing magistrate." at 843, (emphasis supplied)

"The Aguilar synthesis combined the requirement that the informer be reliable with the requirement that he have an adequate basis for his allegations, emphasizing the need for 'underlying circumstances' in support of *each* element." at 844. (emphasis supplied)

In State v. Cadigan, supra, the Supreme Court of Main in discussing the Aguilar rule said: "Thus, it is essential that the magistrate to whom application is made for search warrant be informed of some of the underlying circumstances from which the applicant (or the informer if the applicant's knowledge is from hearsay) concluded that the crime was being or had been committed and that the things to be searched for were and could be found in a designated place; and *additionally,* in the case of hearsay information, it is necessary that the officer-affiant state, for the enlightenment of the hearing magistrate, some of the underlying circumstances which enabled him to conclude that the informer was credible and his information reliable."

It is observed that the affidavit in Spinelli stated that the FBI had been "informed by a confidential reliable informant" without further description or mention of the informer. While the majority concluded that the Spinelli affidavit failed to meet both ends of Aguilar's two pronged test and was not saved by other facts and circumstances attested to supply the evidence of probable cause, it is interesting to note Mr. Justice Harlan's language as to the problem confronting us. First, noting that the affiant-officers did not attempt to support their claim that their informant was credible or his information reliable, he wrote:

"Applying these principles to the present case, we first consider the weight to be given the informer's tip when it is considered apart from the rest of the affidavit. It is clear that a Commissioner could not credit it without abdicating his constitutional function. *Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion.* Perhaps even more important is the fact that Aguilar's other test has not been satisfied. * * *" (emphasis supplied)

The issue then for decision is whether or not the mere statement that the source of the hearsay was "credible and reliable" offered a "substantial basis" for crediting the hearsay, see Jones v. United States, supra, given the particular facts of the case at bar. The difficulty with which we are faced is due in part to the fact that Aguilar focused primarily on the need for factual support for the informer's allegations. There was no elaboration of the "underlying circumstances" requirement which also applied to the officer's belief in reliability. Spinelli did not offer much greater help. Certainly it would appear that the purely conclusionary averments of reliability accepted in a few earlier cases (e. g. United States v. Eisner, 297 F.2d 595 (6th Cir.) cert. denied, 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17 (1962) are now inadequate.[8]

---

8. This raises the question of whether highly generalized recitals unaided by supporting particulars which have frequently appeared in the past are now acceptable. "Previously reliable informer," "informer of proven reliability and credibility," and "informant who has given information in the past," are a few of the examples. These somewhat vague phrases hint or suggest a consistent history of reliability but may be really ambiguous. The instance of inaccurate information may have outnumbered instances where the information proved correct. Note, however, that in Acosta v. State, Tex.Cr.App., 403 S.W. 2d 434, the affiant after swearing he had "received reliable information from a credible person" stated: "Although I do not desire to name this person, on about four prior occasions he has given information to me concerning narcotics being possessed by certain individuals, and on every occasion his information has proven to be true." The records in this Court indicate that Texas officers

Unquestionably the purely conclusionary recital of "credible and reliable" in the affidavit in the case at bar standing alone must fall short of the mark in satisfying the latter half of the double barreled requirement of the Aguilar test.

The State, however, vigorously contends that the "underlying circumstances" supporting the unidentified informant's conclusion of guilt (that the narcotics were where she claimed they were), being the personal observation of the informer, are not only ample to satisfy the first half of the Aguilar test but are sufficient to supply any deficiency in the "underlying circumstances" relating to the credibility of the informer or reliabilty of his information thus meeting the second half of the test. The State also points out in its brief that " * * * where the informant's information is not within the informant's personal knowledge (i. e. *hearsay)* then, and only then, must facts be set out establishing the credibility of the informant." This is clearly wrong.

Nor can I agree with the other portion of the State's position though certainly an affidavit is to be read from its four corners. A story teller with a glib tongue can often weave a tale out of the whole cloth. Such a story should not be used to assure his credibility and insure the reliability of the related events.

What the informer says cannot be the test of his reliability.

As stated earlier, it is difficult to determine whether the majority's opinion is agreeing with the State that the claimed personal observations of the unnamed informant are sufficient standing alone to satisfy both prongs of the Aguilar test or whether the Court is saying that such personal observations are sufficient not only to satisfy the first half of the Aguilar test but if detailed and incriminating enough (to a degree not specified) may overflow to supply the unsupported conclusion of the affiant that the ·informer is credible or his information reliable which would

have normally, since Aguilar, avoided generalized recitals as to reliability and have included something more.

In United States v. Suarez, 2 Cir., 380 F.2d 713, the command of Aguilar was satisfied where affiant swore the "informant had provided extremely accurate information 'on at least 100 occasions.'" In United States ex rel. Rogers v. Warden of Attica State Prison, 2 Cir., 381 F.2d 209, the affiant stated the "informant had previously supplied information that led to the arrest and conviction of 3 persons." Such statement was held sufficient to apprise the magistrate of the underlying circumstances upon which the officer concluded that the source of information was reliable.

Aguilar may be interpreted as accepting some generalized recitals as satisfactory since it cited Jones v. United States (378 U.S. at 114–115, 84 S.Ct. 1509, 12 L.Ed.2d 723), with approval and the Jones affidavit listed one prior instance of accurate information, and Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, decided the same term as Aguilar, also approved a superficial showing of the basis for the affiant's belief in reliability of the informer. Jones and Rugendorf can be interpreted, however, as permitting a less con-

vincing showing where there is some corroboration of the informer's report, even though that corroboration is not strong enough independently to suggest the truth of the information. See United States v. Freeman, 2 Cir., 358 F.2d 459; 53 Calif.Law Review 840. Cf., however, Perry v. United States, 118 U.S.App. D.C. 360, 336 F.2d 748 (1964).

Perhaps no set standard can or should be formulated for the extent of a showing of reliability. Each case must be decided on its own merits. Some factors relevant to the question of reliability and necessary to an adequate elaboration are: the length of time that the affiant-officer has known and dealt with the informer; the number of tips received; the accuracy and character of the information received; the general reputation of the informer; the manner in which the informer was paid for his information, if he was, and whether in narcotic cases, the informer himself was an addict. Officers-affiants often shy away from a detailed factual elaboration supporting both the informant's accusation and the affiant's assertion of his reliability for fear that clues are thereby provided as to the informer's identity.

otherwise be deficient in view of the latter half of the Aguilar rule.

If either interpretation is correct, it would mean that an informant previously unknown to the police could appear at a police station and tell his story. If the police officer-affiant believed that the story of the informant was based upon his personal observations accompanied with specific details, then he might conclude on that basis alone the informant was credible and his information reliable. Thereafter he might present an affidavit to the magistrate such as the one in the case at bar without naming the informant. Then the magistrate without further question would make a finding of probable cause based upon the claimed personal observations of the informant and the officer's mere conclusion that the informant was credible or his information reliable. Thus probable cause would in fact rest entirely upon the claimed personal observations of an unnamed informant whose identity in fact may never be revealed.[9]

It would appear that under any circumstances, a reviewing magistrate should be given some conception other than the bare conclusion of the affiant of how reliable the particular informant is. He must know something of the basis of that belief. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159. This is particularly true where a search warrant is being based upon the informer's information alone. In such case a stronger showing on reliability should be required. If the recital as to reliability lacks any factual indication of how reliable the informer is the magistrate is, in effect, then relying upon the conclusions of the affiant that the informer is sufficiently reliable and not upon his own independent judicial determination. When the magistrate accepts pure conclusion of the affiant he becomes a rubber stamp and abdicates his constitutional duty. Where reliability is important the facts supporting reliability are as essential as any others to a showing of probable cause.

As to whether the personal observations of an informer are sufficient per se to satisfy both prongs of the Aguilar test I note that Mr. Justice White, in his concurring opinion in Spinelli, said: "If the affidavit rests upon hearsay—an informant's report—what is necessary under Aguilar is one of two things: the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is good reason for believing it—perhaps one of the usual grounds for crediting hearsay information. The first presents few problems: since the report, although hearsay, purports to be first-hand observation, remaining doubt centers on the honesty of the informant, and that worry is dissipated by the officer's previous experience with the informant. * * *"

Would there be any remaining doubt if personal observations of the informant were

9. Normally the accused will not be able to secure the identity of the undisclosed informer in order to refute the existence of probable cause. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62; Bosley v. State, Tex.Cr.App., 414 S.W.2d 468. Only if the accused is able to bring himself within the rule of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, would the name of the informer need be disclosed.

Let it further be remembered that if an affiant has no informer or corroboration and simply swears falsely, there is no way, in this state at least, that the accused may go behind an affidavit valid on its face and impeach such affidavit by showing the affiant to be untruthful. Hernandez v. State, 158 Tex.Cr.R. 296, 255 S.W.2d 219; Harkey v. State, 142 Tex.Cr.R. 32, 150 S.W.2d 808; Piper v. State, 116 Tex.Cr.R. 378, 34 S.W.2d 283; Cordona v. State, 115 Tex.Cr.R. 538, 31 S.W.2d 452. Cf., however, McCray v. Illinois, supra; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; United States v. Pearce, 7 Cir., 275 F.2d 318; See also Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; King v. United States, 4 Cir., 282 F.2d 398.

sufficient standing alone to satisfy Aguilar? I think not.[10]

Apparently the reverse is not true. "Underlying circumstances" sufficient to satisfy the bottom half of the Aguilar test would not appear to supply any deficiency in the "underlying circumstances" essential to the top half of the test.

In Spinelli I observe that Mr. Justice White concurring said:

> "Neither should the warrant issue if the officer states that there is gambling equipment in a particular apartment and that his information comes from an informant, named or unnamed, since the honesty of the informant and the basis for his report are unknown. Nor would the missing elements be completely supplied by the officer's oath that the informant has often furnished reliable information in the past. This attests to the honesty of the informant, but Aguilar v. Texas, supra, requires something more—did the information come from observation, or did the informant in turn receive it from another? * * * The past reliability of the informant can no more furnish probable cause for believing his current report than can previous experience with the officer himself." See also United States v. Roth, supra.

For the reasons stated, I cannot bring myself to agree with the conclusions of the majority. There exists, however, in my opinion another basis which justifies the affirmance of this conviction.

As noted earlier, the main thrust of the argument of both parties has been directed to the sufficiency of probable cause when based soley on hearsay unaided by any corroboration, surveillance, etc.

A close reading of the affidavit as a whole convinces me there is more than hearsay here involved. The affiants here, unlike the one in Perez, do not state that they rely entirely upon the informant's hearsay. They swear of their own personal knowledge that a certain described building is located at 608 19½ Street in Austin; that the accused, whom they describe in some detail, occupies the bottom apartment in said building with other persons. Whether such information was acquired by independent corroboration or surveillance is not revealed but none of such information is attributed soley to the informer. Since they personally knew the location of the building and of the existence of the accused they knew the informer's story was not entirely out of the whole cloth. Such personal knowledge lends support to their otherwise unsupported conclusion that the informant is "credible and reliable." Such construction can only be a common sense and realistic reading of the affidavit here involved. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684.

Therefore I concur in the result reached by the majority but for the reasons stated in this opinion.

MORRISON, J., joins in this concurrence.

---

10. Note further that the Fifth Circuit Court of Appeals in Texas v. Gonzales, 388 F.2d 145, which involved one of the police officers who conducted the search in the case at bar, said:
> "In this case, the police did not have probable cause to believe that narcotics were present in the Selvera home: The search warrant was invalid under the Aguilar doctrine; there was nothing to suggest that the informer, who stated to Gann that narcotics were being peddled at Selvera's home and that he had seen Selvera retrieve a small package from the alley, was reliable or that his tale was credible." 388 F.2d at p. 148.

Thus it would appear just any personal observations are not sufficient in themselves to satisfy the bottom half of the Aguilar test.