**UNITED STATES, Appellant,**

v.

**Ronald D. MALCOLM, Appellee.**

**No. 7081.**

District of Columbia Court of Appeals.

Argued June 19, 1973.

Decided Jan. 27, 1975.

Douglass J. McCollum, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Eugene M. Propper, Asst. U. S. Attys., were on the brief, for appellant.

William J. O'Malley, Jr., Washington, D. C., for appellee.

Before REILLY, Chief Judge, and KERN and HARRIS, Associate Judges.

REILLY, Chief Judge:

An appeal from a suppression order in the Superior Court predicated upon a refusal by the government to produce certain documents requested by the defendant under the second subsection of the Jencks Act, 18 U.S.C. § 3500(b), brings to this court another question of construction of that statute. The subsection provides:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness the court shall order it to be delivered directly to the defendant for his examination and use.

It is the contention of the government that the material it was ordered to produce did not contain a "statement . . . of the witness . . . which relates to the subject matter as to which the witness has testified."

The defendant in this case was arrested without a warrant while carrying marijuana on a public street and charged by information with a violation of D.C.Code 1973, § 33–402. A motion to suppress as evidence a quantity of marijuana which a search of his person had yielded, was heard to determine whether there was probable cause for his arrest.

At the suppression hearing a police officer testified that on the day of the arrest he received a telephone call from an informant, personally known to him as a

trustworthy source of information with respect to illegal narcotics transactions, telling him that a man named "Reds", whom he described in detail, was selling marijuana in the 2500 block of 14th Street, N.W. Not content, however, merely to have the officer assert the informant's reliability, the prosecutor continued his direct examination as follows:

Q. Officer, have you ever . . . rceived any information from this informant in the past?

A. Yes, I have.

Q. Could you tell this Court approximately how many times and what have been the results.

A. On at least seven times he has made controlled narcotics purchases under the supervision of myself and another officer in the narcotics branch which has resulted in the obtaining of a U.S. Magistrate's search warrant and the execution of same, each with seizures of narcotic drugs and arrests being made, which cases are now pending in the judicial system.

The officer also testified that after the telephone conversation, he and another policeman met the informant and were told that additional sales had transpired since the call was made. They instructed the informant to return to 14th Street and make further observations. Soon thereafter, he reported that a new transaction was in progress between "Reds" and a female. The officers thereupon went to the particular block specified by the informant, and saw a woman talking to a man who was standing in the very place the informant had said "Reds" would be. Perceiving that the man's physical appearance and clothing

matched in every respect that of the individual—appellee Malcolm—described by the informant, they placed him under arrest and searched him. Three envelopes of marijuana were recovered from the arrestee's right front pocket, according to the officer's testimony.

Defense counsel, after putting a few questions on cross-examination, requested production of Form PD–163—a report which officers are required to file immediately after an arrest. The court not only granted that request, but ordered sua sponte that "[a]ll Jencks material" be produced. With only the PD–163 available, the hearing was recessed to give the prosecution time to gather all other relevant documents, including the officer's pocket notebook. When the hearing resumed two days later, the government produced Forms PD–251 and 255, the "Report of Crimes Against Persons or Property" and the "Arrest Report", respectively, and reported that no notebook entries had been made.

■ The defendant then demanded production of the affidavits in the seven other cases (alluded to by the police witness) in which the informant had provided data on which applications for search warrants were based. Over objection, the court ordered these documents produced. When the government declined to do so, all the officer's testimony was sticken and the motion to suppress was granted.[1]

Before reaching the ultimate issue with respect to the correctness of the trial court's ruling, a preliminary question must be considered. Obviously the purpose of the defense in demanding production of the affidavits in the search warrant cases was to ascertain whether there was anything in

1. When the government elects not to comply with an order of a trial court requiring the delivery of a witness' prior statement to a defendant, the Jencks Act directs the court to strike the testimony of such witness. 18 U.S.C. § 3500(d). By its terms the Jencks Act does not come into play until after the "witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). We have held, however, that its provisions must be deemed applicable to a witness who testifies at a pretrial hearing on a suppression motion. United States v. Dockery, D.C.App., 294 A.2d 158 (1972). For purposes of the suppression hearing, the testimony was deemed "in the trial of the case."

such documents which would contradict the police witness and thus lay a basis for impeaching his testimony as to the informant's reliability. It is also obvious that such contradictions, if any, would bear only upon a small portion of the officer's direct testimony, viz., his reference to the informant's role in other cases which had nothing to do with the officer's testimony respecting what he had learned and observed immediately prior to arresting the defendant in the case now before us.

■■ Where an officer relies upon information given him by a third person for making an arrest without a warrant, the test of the propriety of such action depends upon there being some substantial basis for crediting the informant's story. Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960). Consequently a court confronted with a motion to suppress must be informed of the underlying circumstances from which the officer concluded that the informant was credible. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).[2] One such ground might be that the particular informant had previously given accurate information. Jones v. United States, *supra*, 362 U.S. at 271, 80 S.Ct. 725. Thus where the arresting officer believed in an informant primarily because of reliability demonstrated on prior occasions, it has been held in this jurisdiction that cross-examination directed at bringing out the trustworthiness of the informant on such occasions should have been permitted. Jackson v. United States, 118 U.S.App.D.C. 341–342, 336 F.2d 579–580 (1964). *See also* Perry v. United States, 118 U.S.App.D.C. 360, 336 F.2d 748 (1964).

In neither the *Jackson* nor *Perry* cases was any request for Jencks Act material made. In supporting the ruling of the

court below, however, it is argued that these decisions prove that whenever the reliability of an informant is averred by the arresting officer on direct examination, the defense for the purpose of impeaching such testimony is entitled to the production of any documents bearing upon the experience of the police with such informant in other cases.

■ This argument overlooks the principle that the reasonableness of the officer in according credence to what he has been told, may be demonstrated on grounds wholly independent of whatever prior reliability his informant had exhibited. Hence corroboration by the officer of the facts furnished him in advance of the arrest is sufficient to justify such arrest, irrespective of the policeman's prior knowledge of the informant. Frequently arrests for a crime which has just occurred are based upon a description furnished by a victim or an eyewitness previously unknown to the police force. Such sources may be relied upon if "the information given is sufficiently accurate to lead the officers directly to the suspect." Wong Sun v. United States, 371 U.S. 471, 480, 83 S.Ct. 407, 413, 9 L. Ed.2d 441 (1963). *See also* cases cited in footnote 2, *supra.*

■ In the case before us, the arresting officer gave testimony regarding the detailed information supplied by the informant in precipitating the challenged arrest and how every aspect of it, including place, time, and physical appearance, was checked and verified by the officer before taking appellant into custody and searching him. Under similar circumstances, the Supreme Court has held that probable cause for arrest existed.

In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), a

---

2. Courts have correctly differentiated between paid or "undercover" informants operating in the underworld and citizens reporting crimes they have seen or learned about to the police. *See* United States v. McCoy, 478 F.2d 176, 179 (10th Cir. 1973); United States v. Wilson, 479 F.2d 936, 940 (7th Cir. 1973); United States v. Unger, 469 F.2d 1283, 1287 n. 4 (7th Cir. 1973); United States v. Roman, 451 F.2d 579, 581 (4th Cir. 1971); Brown v. United States, 125 U.S.App.D.C. 43, 365 F.2d 976 (1973).

federal narcotics agent who had been tipped off concerning the expected arrival of a person reported to be a heroin smuggler at a particular railroad station, observed a man alighting from an incoming train, whose physical attributes, clothing, and briefcase conformed to the informant's description, arrested him and then discovered that he was carrying several ounces of heroin. The Court held that the agent, having personally verified every detail of the information previously furnished except the fact of actual carriage of narcotics, had reasonable grounds to arrest. *See also* McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Jones v. United States, 106 U.S.App.D.C. 228, 271 F.2d 494 (1959).

■ The only remaining question is whether the Jencks Act widened the scope of discovery beyond the ordinary canons of permissible impeachment of an adverse witness. In considering this matter, we assume, as did apparently the motions judge, that the affidavits sought to be produced were all made by the officer who took the stand, for if there is one thing which is crystal clear about the Jencks Act, it is that compulsory disclosure by the government of documents in its possession is limited to prior statements of a witness who has testified.

In a recent decision concerning another aspect of the Jencks Act,[3] we noted that the popular name of the statute was derived from the caption of a Supreme Court decision, Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), which gave rise to conflicting interpretations by lower federal courts. Some of these later holdings went so far as to open the files of investigating agencies to pretrial discovery of confidential reports with respect to interviews with or statements by persons who had not testified and might never be called upon to do so, thereby prompting Congress to enact legislation, now called the Jencks Act, in order to clarify and delimit the effect of the Supreme Court's *Jencks* decision. *See* Palermo v. United States, 360 U.S. 343, 347, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); H.R.Rep. No.700, 85th Cong., 1st Sess. 2–3 (1957).

There can be no doubt that the documents which the *Jencks* decision itself declared improperly withheld from the defendant at his original trial related to the main issue and therefore could have been used legitimately for impeachment purposes. In that case, an officer of a labor union had filed sworn disclaimers of membership in the Communist Party in order to enable his organization to meet the conditions imposed by Section 9(f), (g), and (h) of Title I of the Labor Management Relations Act of 1947[4] for invoking the remedial processes of that statute. He was indicted for perjury, and two undercover agents for the government testified at the trial that they knew the defendant as a fellow Communist. On cross-examination, both witnesses said that they had made reports to the F.B.I. respecting their conversations with the defendant and his attendance at party meetings. In the view of the Supreme Court, a defense request for these reports, dealing as they did with crucial subject matter of these witnesses' testimony, should have been granted for impeachment purposes, even though no prior foundation of inconsistency had been laid. Jencks v. United States, *supra*, 353 U.S. at 666–667, 77 S.Ct. 1007. Hence the *Jencks* opinion itself lends no support to the notion that any papers need be produced for impeachment on collateral issues.

What is more important, however, in shedding light on the key words of the Act, "any statement . . . of the wit-

---

3. United States v. Dockery, note 1 *supra*.

4. These subsections have since been repealed. 29 U.S.C. § 159, Pub.L. 86–257, § 201(d) (1959). Prior to the date of the Supreme

Court decision, the labor organization in question—International Union of Mine, Mill & Smelter Workers—had been expelled from the CIO as Communist-dominated.

ness . . . which relates to the subject matter as to which the witness has testified," is the legislative history of this measure. When presented to the Senate, the manager of the bill, Senator O'Mahoney,[5] explained that one of its purposes was "to guard the files of the Government . . . against revelation of matters dealing with other cases, which are not relevant to the case at issue." 103 Cong.Rec. 15782 (1957). He also said:

> Let me make it clear that we are dealing here only with reports which witnesses themselves testified they made with respect to the activities which were alleged to have been participated in *by the defendant. Id.* at 15782. [Emphasis supplied.]

■ Plainly, the affidavits in the warrant cases had nothing to do with "the activities . . . alleged to have been participated in by the defendant" in this case. Accordingly we hold that it was error on the part of the court to order production of such affidavits as the statements contained therein related to cases against persons other than the defendant. As the orders striking the testimony of the witness and granting the motion to suppress were based on this erroneous ruling, such orders are set aside.

Reversed and Remanded.

KERN, Associate Judge (concurring):

I reach the same result as the majority but by a different route.

In assessing whether there was probable cause for arrest by the officer I note that prior to effecting that arrest he himself observed only innocent activity on the part of appellant, viz., talking with a woman on a street corner. This observation seems to me to be inadequate corroboration of the informer's tip that appellant was at that moment in the process of committing a felony—selling narcotics. *See* Whiteley v. Warden, 401 U.S. 560, 567, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); Garner v. State, Del.Supr., 314 A.2d 908, 911 (1973); Oglesby v. Commonwealth, 213 Va. 247, 191 S.E.2d 216 (1972).[1] Hence, the informer's prior reliability[2] was indeed crucial to establishing probable cause for appellant's arrest.

However, the material appellant sought at the suppression hearing to enable appellant to cross-examine the officer concerning the informer's prior reliability about which the officer had testified on direct examination consisted of affidavits previously filed with the United States Magistrate in order to obtain search warrants. Since the documents sought were presumably on file with a federal judicial officer and thus a matter of public record I do not understand upon the record we have before us how such documents were statements "in the possession of the United States" and how they can be within the ambit of the Jencks Act, 18 U.S.C. § 3500 (1970). Accordingly, I agree the order of suppression by the trial court must be reversed.

5. He was chairman of the subcommittee from which the bill had originally been reported.

1. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), is distinguishable in my view. Preliminarily, there is some question of its applicability to facts other than its own. *See* Spinelli v. United States, 393 U.S. 410, 426–429, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969) (concurring opinion). In any event, the Court noted in *Draper* (358 U.S. at 313, 79 S.Ct. at 333) that the arresting officer "would have been derelict in his duties" had he not effected the arrest because the information given by Hereford [the informant] "had always been found accurate and reliable". Moreover, as the Court recognized in *Spinelli* (393 U.S. at 417–418, 89 S.Ct. 584) the tip in *Draper* accurately predicted the defendant's future activities in such detail as to show on the informer's part an intimate knowledge of defendant's illegal activities. Here, in my view, such detail was lacking.

2. It is clear that the particular informant here was a "professional" in former rather than a casual eyewitness to or victim of crime whose reliability need not be so strictly established.