**David Russell DUNCAN, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–03–006–CR.**

Court of Appeals of Texas,
Fort Worth.

July 22, 2004.

Rehearing Overruled Oct. 7, 2004.

Henry C. Paine, Denton, for Appellant.

Bruce Isaacks, Crim. Dist. Atty., Catherine Luft, Jonnie Cleveland, Lori Moraine, Denver McCarty, Asst. Dist. Attys., Denton, for State.

PANEL B: CAYCE, C.J.;
DAUPHINOT and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. Introduction

Appellant David Russell Duncan appeals his conviction for possession of child pornography. In his sole point on appeal, Duncan contends that the trial court erred by denying his motion to suppress because the allegations in the search warrant affidavit were insufficient to support a probable cause finding that child pornography would be found in his residence. We will affirm.

### II. Procedural Background

On September 28, 2000, Duncan was charged with the offenses of unlawful interception of electronic communications and four counts of possession of child pornography. On May 17, 2001, Duncan filed a motion to suppress evidence seized pursuant to a search warrant issued on July 10, 2000, and the trial court granted his motion. The State appealed to this court, contending that the trial court erred by granting Duncan's motion because the allegations in the search warrant were sufficient to support a probable cause finding that child pornography would be found in Duncan's residence. *State v. Duncan,* 72 S.W.3d 803, 804 (Tex.App.-Fort Worth 2002, pet. dism'd). On appeal, looking solely to the four corners of the affidavit, deferring to the reasonable inferences that the magistrate could have made from the facts provided in the affidavit and to the magistrate's common sense and practical interpretation of the affidavit, we held that "a substantial basis existed for the magistrate's determination that child pornography and related items would probably be found in Duncan's residence." *Id.* at 808. Accordingly, we reversed the trial court's order granting Duncan's motion to suppress and remanded the cases for trial. Duncan then filed a petition for discretionary review, and the court of criminal appeals dismissed it as untimely.

The cases were remanded to the trial court, and Duncan once again filed a motion to suppress evidence seized pursuant to the July 10 search warrant. On November 25, 2002, the trial court denied this motion. Thereafter, Duncan pleaded guilty to the offense of possession of child pornography, and the trial court sentenced him to seven years' imprisonment, probated for seven years, and imposed a $1,000 fine. The trial court granted Duncan permission to appeal its denial of his pretrial motion to suppress. This appeal followed.

### III. Law of the Case Doctrine

■ On appeal, Duncan contends that the trial court erred by denying his motion to suppress because the allegations in the search warrant affidavit were insufficient to support a probable cause finding that

child pornography would be found in Duncan's residence. The State asserts that this court previously resolved this very issue in *State v. Duncan*, and that therefore, the law of the case doctrine governs the disposition of this appeal. *See id.* at 804. We agree.

The law of the case doctrine "provides that an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal." *Howlett v. State*, 994 S.W.2d 663, 666 (Tex.Crim.App.1999). Law of the case is a court-made doctrine designed to promote judicial consistency and efficiency by eliminating the need for appellate courts to prepare opinions discussing previously resolved matters. *Id.* "The doctrine assures trial courts that they can rely on the appellate court's disposition of an issue in presiding over the case and provides an incentive for trial courts to follow these decisions closely." *Id.*

However, the doctrine's application is not inflexible. *See Ex parte Granger*, 850 S.W.2d 513, 523 (Tex.Crim.App. 1993). An appellate court may reconsider its earlier disposition of a point of law if the court determines that there are "exceptional" circumstances that mitigate against relying on its prior decision. *Id.* Where the facts and issues are identical in a second appeal, the most common "exceptional" circumstance is that the earlier disposition appears to have been "clearly erroneous." *Id.*

In the instant case, Duncan's sole point of error challenges the exact question of law that this court resolved in *State v. Duncan*: Whether the allegations in the search warrant affidavit sufficiently established probable cause to support the issu-ance of a warrant to search Duncan's residence for child pornography. 72 S.W.3d at 804. In the first appeal, we determined that the same affidavit at issue in this appeal established "a probability ... that child pornography would be found at Duncan's residence." *Id.* at 807. Despite Duncan's arguments, we are unpersuaded in this subsequent appeal that our previous decision was "clearly erroneous." Therefore, because this court previously decided this issue adversely to Duncan in *State v. Duncan*, and because Duncan fails to demonstrate that our prior decision was "clearly erroneous," we hold that the law of the case doctrine applies. Accordingly, we overrule Duncan's sole point.

## IV. CONCLUSION

Having overruled Duncan's sole point, we affirm the trial court's judgment.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

Because the majority fails to address issues raised by Appellant and not addressed in *Duncan I*,[1] I respectfully dissent.

Appellant filed a pretrial motion to suppress the fruits of the search of the home where he lived with his parents. He argued that the affidavit supporting the warrant was defective in several respects. The trial judge agreed and granted the motion to suppress. The State filed an interlocutory appeal, and this court reversed, holding that the magistrate who signed the warrant could infer those matters missing from the affidavit, such as the existence of an " 'elaborate set up for videotaping and photographing' people,"

---

1. *State v. Duncan*, 72 S.W.3d 803 (Tex.App.-Fort Worth 2002, pet. dism'd, untimely filed).

its location, the existence of "records of this intimate activity," the locations of these "records," the existence of photographs and videotapes, their location, and the situs of the sexual activity.[2]

On remand, the trial court heard further argument and evidence on Appellant's motion to suppress and also conducted a *Franks* hearing.[3] Obviously, because the trial court granted the motion to suppress at the original hearing before remand, Appellant did not insist on offering additional evidence at that original hearing. Because Appellant lost on the State's interlocutory appeal, however, Appellant had every incentive to offer new evidence and argument on remand, just as the State would in a case remanded from this court for factual insufficiency.

Chief Mike Shackleford, the affiant, testified at the *Franks* hearing. Viewing his testimony in the kindest and most generous light, his affidavit contains falsehoods exhibiting at best a reckless disregard for the truth. Yet the majority neither mentions nor addresses the new evidence, although the "law of the case" doctrine applies only when there is no change in the evidence surrounding the search.[4] Nor does the majority consider the sufficiency of the affidavit after the admitted false-

hoods are removed from the affidavit as required.[5]

The Texas Court of Criminal Appeals instructs us that

> [w]hen a challenge is made as to whether a search warrant affidavit is legally sufficient to show probable cause, the trial court is limited to the "four corners" of the affidavit. *See Gaston v. State*, 440 S.W.2d 297, 302 (Tex.Crim. App.1969). This is entirely different from a challenge to the truthfulness of a warrant affidavit and whether the affiant made knowing misrepresentations to establish probable cause. When the defendant challenges the warrant affidavit on the ground that it contains known falsehoods, as is the case here, the trial court is not limited to the "four corners" of the affidavit. *See generally,* GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE §§ 6.36–6.43 (2d ed.2001). Limiting a falsity challenge to the four corners of the warrant affidavit negates the underlying challenge and raises serious due process concerns. *See Franks* [, 438 U.S. at 156, 98 S.Ct. at 2676] (stating that "if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment *requires* that a hearing be held at the defendant's

---

**2.** *Id.* at 807–08.

**3.** *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

**4.** *See Bell v. State*, 938 S.W.2d 35, 42–43 (Tex.Crim.App.1996) (recognizing that the "law of the case" doctrine does not apply to evidentiary sufficiency challenges), *cert. denied*, 522 U.S. 827, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997) (citing *Alexander v. State*, 866 S.W.2d 1, 2–3 (Tex.Crim.App.1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994)); *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986) ("Thus, when in the second trial or proceeding, one or both of the parties amend their pleadings, it may

be that the issues or facts have sufficiently changed so that the law of the case no longer applies."); *Ex parte Calvin*, 689 S.W.2d 460, 463 (Tex.Crim.App.1985) (citing 6 TEX. JUR.3D, *Appellate Review* § 908 (1980)); *Rose v. Baker*, 143 Tex. 202, 183 S.W.2d 438, 442 (1944).

**5.** *See Franks*, 438 U.S. at 156, 98 S.Ct. at 2676; *Janecka v. State*, 937 S.W.2d 456, 462 (Tex.Crim.App.1996), *cert. denied*, 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997); *Davis v. State*, 144 S.W.3d 192, 200–03 (Tex. App.-Fort Worth 2004, no pet. h.) (holding that when the false statements are removed from the officer's affidavit, there remains no probable cause to support the warrant).

request") (emphasis added). Thus, if a defendant has made a substantial preliminary showing of deliberate falsity, the trial court is required to go behind the "four corners" of the affidavit in a *Franks* evidentiary hearing.[6]

The *Cates* court, which reversed both the trial court and the intermediate appellate court, dealt with a trial court's limiting the defendant's proof at the suppression hearing to the four corners of the affidavit. The case now before this court is in a slightly different posture. Here, the trial court understood the due process requirements of a *Franks* hearing. The majority opinion does not reflect such an understanding. In fairness to the majority, Appellant does not specifically refer to *Franks*, nor is it clear that Appellant realized that the trial court had granted him a *Franks* hearing. But if, as the majority urges us to do, we apply a "common sense approach," a review of the record reveals that Appellant satisfied all of the elements required by *Franks*.[7] Subsection h of Appellant's motion states,

> The search warrant was illegally issued because the issuing magistrate was misled by information in the affidavit that the affiant officer knew was false or would have known was false except for his reckless disregard for the truth. The premises described in the warrant are under the exclusive control of Dan and Jeannette Duncan. A cursory search of the mortgage or utility or postal records could have easily established this, but the Affiant chose not to make this effort.

Yet the majority denies Appellant review on appeal not only of the *Franks* issues but also the new issues raised in the trial court after remand. Never does the majority address the complaints of lack of particularity, staleness, unreliability, bias of the magistrate, or many of Appellant's other new complaints.

Appellant points out that the affiant Shackleford had no personal knowledge of the matters necessary to establish probable cause. Shackleford's information was based exclusively on the statement made by Megan Winton, Appellant's former girlfriend, on July 6, 2000. Although Shackleford swore Winton said her date of birth was June 3, 1984, the affidavit does not indicate any confirmation of this fact. An essential element of the offense of possession of child pornography is that the visual material depict a child younger than 18 years of age at the time the image of the child was made.[8] There is no corroboration of Winton's identity or that the "Megan" referred to in the affidavit is Megan Winton.

There is no corroboration of the averment that the premises to be searched were in charge of and controlled by Appellant. Indeed, the premises were not under Appellant's control. Appellant was a high school student at the time, and he lived with his parents, who were in charge of and controlled the home Shackleford sought to search. Either Shackleford knew Appellant was a high school student living with his parents and intentionally lied to the magistrate, or he showed a reckless disregard for the truth he swore to. It would have been a simple matter to verify who lived in and controlled the home, but Shackleford did not, nor did he even corroborate his statement that Appel-

---

**6.** *Cates v. State,* 120 S.W.3d 352, 359 n. 3 (Tex.Crim.App.2003).

**7.** 438 U.S. at 156, 98 S.Ct. at 2676; *Cates,* 120 S.W.3d at 357–59.

**8.** TEX. PENAL CODE ANN. § 43.26(a)(1) (Vernon 2003).

lant lived at the address listed in the affidavit.[9]

Nowhere in the affidavit does Shackleford claim that "Megan" had ever been to the home he sought to search. Consequently, nowhere in the affidavit is there any claim that anyone had recent knowledge that the laundry list of items he was authorized to seize even existed, much less that they existed inside the home he sought to search.[10]

Appellant points out that the affiant Shackleford swore that "Affiant stated that she has had a sexual relationship with" with Appellant, and that the affiant had broken off the relationship. Appellant also points out that the gender of the affiant is not absolutely established in this portion of the affidavit, although the pronoun "she" refers back to the affiant. The "she" referred to in the affidavit claimed that Appellant had told her that he had videotape and photographs of her and Appellant engaged in sexual relations.

Putting the best face on these allegations, this affidavit is merely a case of sloppy drafting, but there is no room for sloppy drafting when seeking to invade the sanctity of someone's home. That an unbiased magistrate could have signed the warrant based on this affidavit raises grave concerns about the Fourth Amendment protections afforded Appellant.[11]

The remainder of the affidavit reports the affiant Shackleford's suspicions that sophisticated photographic and computer equipment must exist, "[b]ased upon the above information obtained from interviewing Megan." Based upon nothing at all, Shackleford swears at the beginning of his affidavit that located in the "suspected place and premises" are child pornography, diaries, computer services bills or records, telephone or address books or any records of any kind of possible child sexual partners or traders and sellers of child pornography, camera equipment, correspondence, computers and computer-related equipment, videocassette tapes that may have been used to store child pornography or child erotica, "intelligence materials," and any items that may help identify child victims of sexual exploitation.

Nowhere in the affidavit does Shackleford set forth any basis for this belief, the name of any person who has seen these objects, any time frame for the existence of these items in this home, or any basis for reliability of any informant. Nowhere is there evidence that the magistrate was an attorney or a judge of a court of record, although certain of the items sought are mere evidence, and their seizure is therefore controlled by Article 18.01 of the Texas Code of Criminal Procedure.[12]

This affidavit, at best, reaffirms the dangers of using form affidavits. At worst, it

---

9. *See Davis,* 144 S.W.3d at 202 ("While Officer Wallace might not have actually *known* this information was inaccurate, he *knew that he had not verified* this information despite swearing otherwise and that the preliminary information on these two people had come from a new informant. This failure to verify shows that Officer Wallace could have known and should have known of the falsity of the information and that he failed to verify the information with reckless disregard for its truth or accuracy.").

10. *See Long v. State,* 132 S.W.3d 443, 447 (Tex.Crim.App.2004).

11. *See id.* at 448 ("'Obedience to the particularity requirement both in drafting and executing a search warrant is therefore essential to protect against the centuries-old fear of general searches and seizures.'") (quoting *United States v. Heldt,* 668 F.2d 1238, 1257 (D.C.Cir.1981), *cert denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982)).

12. Tex.Code Crim. Proc. Ann. art. 18.01(c) (Vernon Supp.2004).

is an intentional attempt to mislead the magistrate by presenting Appellant as a grown man who fixates on children as sexual objects, exchanges child pornography with other sexual deviants, and stalks child victims. In reality, Appellant and Winton were high school sweethearts who broke up. Winton claimed that Appellant had threatened to embarrass her before she contacted the police. Shackleford was well aware that the age difference between Appellant and Winton was less than three years.

At the hearing on Appellant's motion to suppress after remand, Shackleford admitted that his affidavit contained no indication of any basis to believe that there were diaries or other records of child sexual partners or computer online and internet access service bills or other records. He admitted that "Megan" never told him she saw a camera, and he could not remember whether she ever said there was a video camera. Appellant was not allowed to ask, "Based on the affidavit, Chief Shackleford, there was no information to believe that anyone had ever seen a camera or video or motion picture camera; is that correct?" Shackleford also admitted that there was no evidence of any sort that anyone ever saw computers or computer-related equipment at the home.[13]

There are two standards at play in the appropriate analysis of this affidavit. In determining whether probable cause exists to issue the warrant, we are limited to the four corners of the affidavit, as was the issuing magistrate.[14] " 'Suspicion and con-jecture do not constitute probable cause, and the facts as recited in the affidavit in this cause evidence nothing more than mere suspicion.' "[15] Additionally, while possession of child pornography is a current offense, the alleged threat to publish that compelled Megan to contact the police was a different, future offense. A future offense is one that has not yet occurred.

The second standard is that applied to a *Franks* challenge to the warrant.[16] In this inquiry we go behind the four corners of the affidavit.[17] When a police affiant makes statements in a search warrant affidavit that are intentionally false or made with reckless disregard for the truth, the statements must be excised from the affidavit before determining whether the affidavit affords probable cause for the issuance of the warrant.[18]

Applying the appropriate standards, we have before us an inadequate, conclusory affidavit based on wholly uncorroborated suspicion of possible current and future offenses resulting in a warrant that was evidentiary in part and issued by an unnamed magistrate who failed to set out the basis of that magistrate's authority and who failed to designate a definite place for the return of the items seized. The basis for this affidavit? A report that two high school sweethearts had broken up. One threatened to embarrass the other by posting on the internet pictures of the two of them engaged in sexual activity. The other went to the police.

---

**13.** *See Long,* 132 S.W.3d at 448.

**14.** *Cates,* 120 S.W.3d at 355 n. 3; *Jones v. State,* 833 S.W.2d 118, 123 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993); *Davis,* 144 S.W.3d at 195.

**15.** *Hass v. State,* 790 S.W.2d 609, 612 (Tex. Crim.App.1990) (quoting *Tolentino v. State,* 638 S.W.2d 499, 502 (Tex.Crim.App.1982)).

**16.** *Cates,* 120 S.W.3d at 357–59.

**17.** *Id.* at 359 n. 3.

**18.** *See Franks,* 438 U.S. at 156, 98 S.Ct. at 2676; *Janecka,* 937 S.W.2d at 462.

Based on the reasoning presented above as well as in my dissent from *Duncan I*,[19] which I adopt, incorporate for all purposes, and append here, I respectfully dissent.

## APPENDIX

### NOS. 2–01–293–CR, 2–01–294–CR.

THE STATE OF TEXAS, APPELLANT,

V. ·

DAVID RUSSELL DUNCAN, APPELLEE.

Delivered March 28, 2002

LEE ANN DAUPHINOT, Justice.

I respectfully dissent to the majority's holding that the trial court erred in granting Duncan's motion to suppress. The majority reasons that the allegations in the search warrant affidavit were sufficient to justify the magistrate's conclusion that child pornography would probably be found in Duncan's residence.

The majority is correct in stating that we review a trial court's ruling on a motion to suppress under a bifurcated standard of review by giving almost total deference to the court's determination of historical facts and reviewing de novo the court's application of the law of search and seizure.[1] The analysis, however, does not end there. Where the trial court does not make explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling.[2] That is, we assume the trial court made implicit findings of fact supported in the record that buttress its conclusion.[3] If the trial court's decision is correct on any theory of law applicable to the case, it must be sustained.[4]

A search warrant must be based upon probable cause.[5] Probable cause sufficient to support the issuance of a search warrant exists where the facts contained within the four corners of the affidavit and the reasonable inferences drawn therefrom justify the magistrate's conclusion that the property that is the object of the search is probably on the premises to be searched at the time the warrant issues.[6] The affidavit must recite facts and circumstances within the affiant's knowledge and of which the affiant has reasonably trustworthy information sufficient to warrant a reasonably cautious person's belief that the offense has been committed and the evidence to be seized is at the particular place to be searched.[7] In evaluating whether probable cause existed for the issuance of a warrant, appellate courts must assess the totality of the circumstances presented.[8]

The State contends that the trial court erred in granting the motion to suppress because the allegations in the search warrant, in their totality, were sufficient to support a probable cause finding that child pornography would be found in Duncan's

---

**19.** 72 S.W.3d at 808–11 (Dauphinot, J., dissenting).

**1.** *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000).

**2.** *Id.* at 327–28.

**3.** *Id.* at 328.

**4.** *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim. App.2000).

**5.** *Wynn v. State*, 996 S.W.2d 324, 326 (Tex. App.-Fort Worth 1999, no pet.) (citing U.S. Const. amend. IV; Tex. Const. art. I, § 9).

**6.** *Id.*

**7.** *Id.*

**8.** *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983)).

residence at the time the warrant was issued. The State argues that the reliability of the affiant and his sources of information are part of the "totality of the circumstances" that the magistrate should evaluate in making a probable cause determination and that the magistrate in this case was entitled to rely on the statements of the sixteen-year-old girl and the officer. While we recognize that a named citizen who is in a position to supply information by virtue of having been a crime victim or witness has an inherent reliability not attributed to police informants,[9] the information in an affidavit in support of a search warrant must nevertheless be complete and specific enough to constitute probable cause to search a particular place.[10]

In this case, the facts set forth within the four corners of the affidavit did not support a reasonable belief that the object of the search, child pornography, was probably at Duncan's residence at the time the warrant was issued. The affidavit does not quote Megan Winton as saying that she and Duncan had sexual relations at his parents' residence or that Duncan had told her that he had any photograph, videotape, or computer file of child pornography at that residence. Although the majority correctly states that the magistrate is permitted to draw reasonable inferences from information contained within the four corners of the affidavit, we cannot read into the affidavit information not gleaned from within the affidavit itself. As the court of criminal appeals has noted:

It is one thing to draw reasonable inferences from information clearly set forth within the four corners of an affidavit. Thus, for example, it is sometimes permissible to presume reliability of an informant by virtue of the detailed nature of the information he supplies. It is quite another matter to read material information into an affidavit that does not otherwise appear on its face. We cannot, in the interest of a commonsense and realistic approach to interpretation of affidavits, "infer" a connection between informant's observation of appellant with contraband, and the residence at 724 Del Mar Street.[11]

As in *Cassias*, "[t]he assertion that the 'premises are in the possession and under the control of' appellant is not attributed to the informant. In fact, it is purely a conclusory statement, the source of which is not given nor the reliability vouched for."[12] A purely conclusory statement will not support the issuance of a warrant because it does not provide facts from which a neutral magistrate may make the necessary findings.[13]

In *Wachter v. State*, the San Antonio Court of Appeals concluded that probable cause existed to support the issuance of a warrant to search for a runaway child, child pornography videos, and controlled substances.[14] In *Wachter*, allegations that the suspect was harboring a runaway were combined with his record involving child sexual assault and claims of his possession of videotapes of young women, demonstrating a continuing pattern of behavior.

---

9. *See Lopez v. State,* 535 S.W.2d 643, 648 (Tex.Crim.App.1976).

10. *See generally* 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 3.4(c) (3d ed.1996).

11. *Cassias v. State,* 719 S.W.2d 585, 590 (Tex. Crim.App.1986) (op. on reh'g) (citation omitted).

12. *Id.* at 588 n. 2.

13. *Id.* at 590.

14. 961 S.W.2d 598, 602 (Tex.App.-San Antonio 1997, pet. ref'd).

In addition, the affidavit in *Wachter* contained the allegation that a runaway and suggestive materials were seen at the suspect's residence within twenty-four hours of the warrant's issuance.[15] In the case now before us, however, the affidavit contains no allegations of contraband having been seen at Duncan's residence. Indeed, Megan never claimed to have seen any photographic depiction of her engaging in intercourse with Appellant.

The State submits that what the affidavit lacks in this case can easily be provided through reasonable inferences based upon common knowledge and experience. The State thus argues that it is highly unlikely that the sexual activity described in the affidavit, which the State erroneously describes as "illegal,"[16] would have taken place in Megan's home rather than Duncan's home and that it makes sense that a person would keep the records of this intimate activity in his home. The State further argues that it was not unreasonable for both the affiant and the magistrate to infer that Duncan had a computer in his home that probably contained evidence of child pornography. There are no allegations in the affidavit, however, from which any such inferences may be drawn. Nor does the affidavit contain any information from which a magistrate could draw the inference that the sexual activity could have occurred in only two possible places, Duncan's family's home or Megan's. Indeed, the State does not explain in its brief why it is more reasonable to speculate that the sexual activity between the two teenagers would have taken place in Duncan's home rather than in Megan's home, a friend's home, a motel, or even in the backseat of an automobile or the bed of a pickup truck.

In *Taylor v. State*, the Amarillo Court of Appeals recognized that general information in an affidavit about a pedophile's propensity to collect child pornography and maintain the collection at his home provided a basis to reasonably infer that contraband could probably be found in a suspect's home.[17] The *Taylor* court concluded, however, that the sending of one image over the Internet would not qualify the suspect as a pedophile where there was an absence of evidence that he collected child pornography or had an interest in it, and the magistrate could not have reasonably concluded that, like a pedophile, the suspect would maintain pornography at his residence.[18]

In this case, the affidavit contains no information that eighteen-year-old Duncan, who is nowhere described in the affidavit, is a pedophile or has a pedophile's propensities. Moreover, the allegations concerning Duncan's sexual relationship with the sixteen-year-old informant, his possession of a videotape and photographs of them having sexual relations, and his statements that he would put the pictures on the Internet do not establish him as a pedophile who probably maintains pornography at his residence. Even if, as the State and the majority urge, we may speculate that the two teenagers would prefer to risk discovery by Duncan's parents rather than

---

15. *Id.*

16. *See* Tex. Penal Code Ann. § 22.011(e)(1) (Vernon Supp.2002) (providing that it is an affirmative defense to prosecution under subsection (a)(2) of section 22.011 that the actor was not more than three years older than the victim).

17. 54 S.W.3d 21, 26 (Tex.App.-Amarillo 2001, no pet.).

18. *Id.*

Megan's parents, the State directs us to nothing to buttress this speculation. As stated in *Taylor*, "[m]ore is needed before the sanctity of one's home can be invaded by the government; it is not enough to simply conclude that contraband is in one's home merely because the suspect has a home."[19]

The only reference in the affidavit to Duncan's residence that was attributed to the informant is that he lived at the stated address. No factual allegations tie the described sexual activity or pictures to Duncan's residence. Viewed in its totality, the affidavit simply lacks allegations from which a resort to "common knowledge" might permit a reasonable inference that any particular picture or other items of child pornography were at Duncan's residence at the time the warrant was issued. Nothing in the affidavit supports the warrant's authorization to rummage freely through Duncan's home and computer files in search of material the informant never claimed existed. Reviewing the court's ruling de novo, I would view the evidence in the light most favorable to the trial court's ruling and hold that the trial court did not err in granting Duncan's motion to suppress.