# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00099-CV

**Toll Dallas TX, LLC f/k/a Toll TX, LP, Appellant**

**v.**

**Brent Dusing and Edith[1] Dusing, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-16-002196, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal from the trial court's denial of a motion to compel arbitration, we again address whether an arbitration agreement between the original purchaser of a home and its builder is enforceable against a subsequent purchaser, but with a slight twist. *See Toll Austin, TX, LLC v. Dusing*, No. 03-16-00621-CV, 2016 WL 7187482, at *3–4 (Tex. App.—Austin Dec. 7, 2016, no pet.) (mem. op.) (holding that subsequent purchaser of home was not bound by arbitration clause in original owner's purchase contract absent evidence of assignment of contract or circumstances justifying application of equitable estoppel). Toll Dallas TX, LLC, contends that our prior holding against its affiliate Toll Austin, TX, LLC, does not control this appeal because a different variety of equitable estoppel applies here that was not addressed in the prior appeal. We

---

[1] As noted by appellees' counsel at oral argument, Edith Dusing's name appears incorrectly as "Elizabeth Dusing" in various documents in the clerk's record, including the order on appeal. We advise the parties and the trial court that her name should appear henceforth in these proceedings as "Edith Dusing."

agree with Toll Dallas and, for the following reasons, reverse the trial court's order denying Toll Dallas's motion to compel and remand for entry of an order abating the proceedings against Toll Dallas and compelling the Dusings to arbitrate their disputes with Toll Dallas.

## BACKGROUND

On February 2, 2015, the Dusings purchased the home at issue from Brodney Pool, who in 2005 entered into an Agreement of Sale (Original Contract) with Toll Dallas's predecessor[2] for the construction and sale of the home. The Original Contract provided that "Seller [Toll Dallas] shall cause to be provided to Buyer [Pool] a 10 year limited warranty (the "home warranty") from Toll Brothers, Inc."[3] The Original Contract contained a broad arbitration provision:

> Buyer, on behalf of Buyer and all permanent residents of the Premises, including minor children, hereby agree that any and all disputes with Seller, Seller's parent company or their subsidiaries or affiliates arising out of the Premises, this Agreement, the Home Warranty, any other agreements, communications or dealings involving Buyer, or the construction or condition of the Premises including, but not limited to, disputes concerning breach of contract, express and implied warranties, omissions by Seller, on-site and off-site conditions and all other torts and statutory causes of action, including but not limited to those arising or administered under the Deceptive Trade Practices Act (DTPA), Residential Construction Liability Act (RCLA) or Texas Residential Construction Commission Act (TRCAA) (the "Claims") shall be resolved by binding arbitration . . . .

Like the Original Contract, the warranty referenced therein, entitled "Home Builder's Limited Warranty" (Warranty), contained a broad arbitration provision:

---

[2] The Original Contract was between Toll Texas, LP, and Brodney Pool. Toll Dallas, LP, is the successor entity to Toll Texas, LP. Accordingly, we refer to Toll Dallas in this opinion when the record refers to either Toll Texas or Toll Dallas.

[3] Toll Brothers, Inc., is an affiliate of Toll Dallas and Toll Austin.

2

**Any disputes between YOU and US**, or parties acting on OUR behalf, including PWC [the administrator of the Warranty], **related to or arising from** this LIMITED WARRANTY, **the design or construction of the HOME** or the COMMON ELEMENTS or the sale of the HOME or transfer of title to the COMMON ELEMENTS **will be resolved by binding arbitration**. Binding arbitration shall be the sole remedy for resolving any and all disputes between YOU and US, or OUR representatives. Disputes subject to binding arbitration include, but are not limited to: . . . Any disagreement that a condition in the HOME or the COMMON ELEMENTS is a CONSTRUCTION DEFECT and is therefore covered by this LIMITED WARRANTY; . . . [and] Any other claim arising out of or relating to the sale, design or construction of YOUR HOME or the COMMON ELEMENTS, including, but not limited to any claim arising out of, relating to or based on any implied warranty or claim for negligence or strict liability not effectively waived by this LIMITED WARRANTY.

(Emphases added.)[4]

In May 2016, the Dusings filed a lawsuit against Toll Austin, asserting claims of negligence and DTPA violations due to faulty construction, based on alleged water infiltration into

---

[4] The Limited Warranty defined the following words:

- "WE", "US" and "OUR" refer to the BUILDER.

- BUILDER means the individual, partnership, corporation or other entity which participates in the Warranty Program administered by the Professional Warranty Service Corporation and provides YOU with this LIMITED WARRANTY. Throughout this document BUILDER is also referred to as "WE", "US" and "OUR."

- "YOU" and "YOUR" refer to the HOMEOWNER, including any subsequent owners.

- HOMEOWNER means the first person(s) to whom a HOME . . . is sold, or for whom such HOME is constructed, for occupancy by such person or such person's family, and such person's(s') successors in title to the HOME, or mortgagees in possession and any representatives of such person(s) who has standing to make a claim on that person(s) behalf.

the home. Toll Austin filed a plea in abatement and motion to compel arbitration, contending that the trial court was required to order the parties to arbitrate based on the provisions in the Original Contract and Warranty. The trial court denied the motion, and we affirmed its order. *See Toll Austin*, 2016 WL 7187482 at *4.

The Dusings then amended their petition to add Toll Dallas as a defendant. After discovery, Toll Dallas moved to compel arbitration.[5] Toll Dallas contended that it had "newly discovered evidence" establishing that Pool assigned the Warranty to the Dusings as part of their home-purchase contract and the Dusings "knew of the water intrusion issue before closing, negotiated a better purchase price because of this known condition, and even agreed to pursue a warranty claim against Toll Brothers and share the proceeds with Pool." Toll Dallas summarized its motion: "Contrary to the Dusings' prior arguments to the trial court and the Third Court of Appeals, newly discovered evidence establishes that: 1) the Dusings are assignees of the Warranty from Pool; 2) the Dusings have made claims and sought relief under the Warranty and are therefore bound by the arbitration clause in the Warranty[.]"

Toll Dallas attached the following evidence to its motion to compel:

- A property-inspection report prepared for the Dusings on January 9, 2015, which identified structural concerns with the foundation, drainage and grading, and Juliet balconies, and which noted "obvious signs of moisture penetration along the front wall of the basement area notably in the exercise room" and "signs on the stucco that may be indicative of a flashing and/or moisture protection deficiency notably around the Juliet balconies."

---

[5] Toll Dallas's motion to compel asserted, "<u>After</u> the trial court denied Toll Austin's Motion to Compel Arbitration, and <u>after</u> the Third Court of Appeals upheld that ruling, the Dusings began to produce documents that negated many of the facts they relied upon and argued in opposition to Toll Austin's Plea in Abatement."

- A mold-inspection report dated January 12, 2015, stating, "The Client [Brent Dusing] indicated that the purpose of this inspection was to determine if there is a mold problem in the Exercise Room [located in the basement of the home] based on previous water intrusion. He is in the process of purchasing this property."

- A January 14, 2015 email from the Dusings' realtor, Dianna Salazar, to a contractor, Judd Fults, requesting him to provide a repair estimate for the Juliet balconies.

- A January 14, 2015 amendment to the Pool-Dusing sales contract stating, "Toll Brothers to inspect property during repair of basement wall for possible warranty reimbursement. If Toll Brothers pays for any portion of repairs the buyer is reimbursed for repair over $30,000 and the remaining amount to be given to Brodney Pool. Any proceeds from Toll Brothers regarding [J]uliet balconies goes to buyer."

- A January 20, 2015 amendment to the Pool-Dusing sales contract providing, "Seller to pay buyers $30,000 at closing or reduce sales price. Non realty addendum is part of contract. **Toll [B]rothers builders warranty to transfer at closing.**"

- A January 21, 2015 email from Toll Brothers representative Brandon Cooper to Pool's realtor, Desmond Milvenan, stating, "In response to your question regarding the transfer of warranty, I can confirm that any time left in the Toll Brothers warranty is transferable with the sale of the home." Milvenan forwarded the email to Salazar the same day.

- A February 19, 2015 email from Cooper to Brent Dusing, in which Cooper provided "updates on the warranty claims" that had been made with respect to the home. Cooper's email explained that,"since our warranty is directly with you [as the new owner of the home], I have to direct my correspondence to you." Cooper further explained that, with respect to the "two outstanding [warranty] claims . . . [(1)] the improper flashing at the upstairs balconies . . . [and (2)] the water intrusion at the basement wall," the balcony-flashing repairs had been completed, with the exception of forthcoming painting work, and the basement-wall water intrusion was considered "non-warrantable" because the "waterproofing of the home was done correctly." Cooper indicated that he would update his file with a "possible structural failure [of one particular area of the basement wall with a leak] as an open warranty claim" but would "bring out an engineering company to inspect the area" to assess the possible claim.

- A March 26, 2015 letter from Cooper to Brent Dusing, stating that "in regards to the warranty request on [the Dusings'] home," "the flashing repairs at the balconies are 100% completed." It further provided, "the waterproofing was compromised by [the Dusings'] contractor, leaving it in a condition to where we could not perform a water test and determine [i]f there was any latent defects" but that "Water Proofing items are not covered in this warranty [and t]herefore any claim concerning the waterproofing is not warrantable." Cooper continued, "In regards to the concern . . . about the structural integrity of the basement walls, we had an engineering firm p[er]form an onsite inspection. Per the attached engineer's report, the concrete wall is structurally sound and will not need further attention. Because of the reasons stated above, we are closing out this warranty request."

- A June 9, 2015 email from Brent Dusing to Cooper, stating, "As part of the purchase [of the home], the previous owner transferred the Warranty to me. Can you send me a copy of the Warranty issued by Toll Brothers[?]"

- A July 23, 2015 email from Brent Dusing to Cooper, stating, "[T]hese are the following issues that we believe fall under the structural warranty. We would like Toll Brothers to fix these issues, please, per the terms of our warranty." Listed as warrantied issues were: the balconies, mold remediation, water in the exercise room caused by leaking through the balconies, cracks in the slab, failure in the waterproofing systems of the basement wall and foundation construction, and the drainage system.

- A November 20, 2015 demand letter from the Dusings' attorney to the Toll entities, describing the same issues as Brent Dusing's July 23 email as "covered by the ten year structural warranty issued by Toll" and noting that the letter "serves as notice of a claim under that warranty." The letter further stated, "the Dusings purchased the house in February 2015 and were assigned the structural warranty issued by Toll."

(Emphasis added.)

The trial court denied Toll Dallas's motion to compel, as well as Toll Austin's motion for reconsideration of its motion to compel, and Toll Dallas appeals.

6

**DISCUSSION**

It is undisputed that the Dusings were not parties to the arbitration agreement contained in the Warranty that Toll Brothers provided Pool contemporaneously upon execution of the Original Contract. Although the general rule is that only parties to an arbitration agreement may be compelled to arbitrate claims falling under its scope, courts have recognized exceptions binding nonparties to an arbitration clause "when the rules of law or equity would bind them to the contract generally." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 129, 130–31 (Tex. 2005); *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 523 (Tex. 2015) (quoting *Weekley Homes*, 180 S.W.3d at 129, and recognizing that nonparties may be bound to arbitration clause under certain circumstances); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) ("[S]ometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa."). The determination of whether an arbitration agreement binds a nonparty is a "gateway matter" involving the validity of the agreement that must be decided by the court, *Weekley Homes*, 180 S.W.3d at 130, and it is a legal question that we review de novo, *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

A party seeking to compel arbitration has the burden of establishing that (1) there is a valid agreement between the parties to arbitrate and (2) the claims raised fall within the scope of that agreement. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). Courts do not reach the second requirement if the first is not established. *See id.* (noting that presumption favoring agreements to arbitrate and resolving doubts regarding agreement's scope in favor of arbitration "only arises after the party seeking to compel arbitration proves the existence of a valid

7

arbitration agreement between the parties"). A nonparty to an agreement to arbitrate may not be required to arbitrate absent the application of one of the six theories recognized by the supreme court: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *See id.* at 739. Toll Dallas asserts the same two theories—assumption and equitable estoppel—as did Toll Austin in its appeal; however, Toll Dallas attempts to distinguish *Toll Austin* as discussed below. If we agree with Toll Dallas on either of these theories, then we must address its further contentions that: (1) the parties' dispute falls within the scope of the Warranty's broad arbitration clause and (2) the Dusings did not meet their burden to support a defense to arbitration. *See Kellogg Brown & Root*, 166 S.W.3d at 737 (noting that party seeking to compel arbitration must prove valid agreement to arbitrate and that dispute falls within scope of agreement); *J.M. Davidson*, 128 S.W.3d at 227 ("If the trial court finds a valid agreement [to arbitrate], the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration.").

***Are the Dusings required to arbitrate under the doctrine of equitable estoppel?***

In *Toll Austin*, we held that because the Dusings' claims "do not arise solely from the Toll-Pool Agreement . . . [but] from [Toll's] general obligations imposed by common-law negligence and relevant statutes," the Dusings did not "seek to derive any benefit from the Toll-Pool Agreement" by way of their lawsuit. *See Toll Austin*, 2016 WL 7187482, at *3; *see also Weekley Homes*, 180 S.W.3d at 131–32 ("Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it. On the other hand, claims can be brought in tort (and in court) if liability arises from general obligations imposed by law.").

8

Accordingly, we held the Dusings were "not bound by the arbitration provision under the direct-benefits-estoppel doctrine." *Toll Austin*, 2016 WL 7187482, at *3.

In this appeal, however, Toll Dallas contends that the other variety of direct-benefits estoppel recognized by the Texas Supreme Court applies yet was not explicitly addressed in *Toll Austin*. That second variety estops a nonparty to an arbitration agreement from avoiding arbitration when that nonparty seeks *and obtains* direct benefits from a contract by means *other* than a lawsuit. *See Weekley Homes*, 180 S.W.3d at 132, 134. "In some cases, a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself." *Id.* at 132. The policy underlying this variety of the equitable doctrine seeks to prevent injustice to another party when a "promisor induces substantial action or forbearance by another" by "consistently and knowingly insist[ing] that others treat it as a party" and then "'turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful.'" *Id.* at 133-35 (internal citations omitted and quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 n.7 (3d Cir. 2001)).

We conclude that the Dusings are bound to the arbitration clause by this second variety of equitable estoppel. The evidence shows that the Dusings made claims under the Warranty and obtained repairs to the balconies and their flashing as a result thereof, and there was significant correspondence between the Dusings and Toll Brothers about whether certain other claims were covered. Toll Brothers contracted with an engineering firm to determine whether further claims of the Dusings were covered by the Warranty. The Dusings negotiated a lower purchase price with Pool due to their receipt of Warranty repairs from Toll Brothers. Based on this evidence, we must conclude that the Dusings both sought and obtained substantial and direct benefits under the

9

Warranty sufficient to trigger the estoppel doctrine and bind them to the arbitration agreement. *See Weekley Homes*, 180 S.W.3d at 133–34 (holding that non-party to home-construction contract who lived in home, negotiated directly with builder on many issues before and after construction, paid deposit on construction, selected floor plan, made custom design choices, signed letter of intent as "purchaser," and requested and received reimbursement from builder for repairs post-construction was estopped from avoiding contract's arbitration provision); *cf. D.R. Horton-Emerald, Ltd. v. Mitchell*, No. 01-17-00426-CV, 2018 WL 542403, at *8 (Tex. App.—Houston [1st Dist.] Jan. 25, 2018, no pet.) (mem. op.) (holding that subsequent home purchaser was not bound by arbitration clause in original construction contract merely due to automatic transfer of builder's warranty to subsequent purchaser and his sending notice to warranty company and receiving home inspection).

We sustain Toll Dallas's second issue and, therefore, need not consider its first issue asserting that the Dusings are bound to arbitrate due to assignment of the Warranty. *See* Tex. R. App. P. 47.1, 47.4. Because of our conclusion that the trial court abused its discretion in determining that there was no valid agreement to arbitrate that is enforceable against the Dusings, we must consider whether the Dusings' claims fall within the scope of the Warranty's arbitration clause. *See Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013); *Kellogg Brown & Root*, 166 S.W.3d at 738.

***Do the Dusings' claims fall within the scope of the Warranty's arbitration clause?***

In determining the scope of an arbitration clause, we resolve doubts concerning the clause's scope in favor of arbitration. *Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 896 (Tex. App.—Austin 2006, no pet.). "Arbitration is heavily favored under federal and state law and should not be denied unless it can be said with positive assurance that the

10

arbitration clause cannot be interpreted so as to encompass the dispute in question." *In re Sun Commc'ns, Inc.*, 86 S.W.3d 313, 317 (Tex. App.—Austin 2002, no pet.) (citing *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex. 1995)). To determine the scope of an arbitration agreement, we first look to the terms of that agreement. *See Marshall*, 909 S.W.2d at 900. We then examine the factual allegations in the petition rather than the legal causes of action. *Id.*

The arbitration clause in the Warranty provides that "any disputes . . . related to . . . the design or construction of the HOME . . . will be resolved by binding arbitration. Binding arbitration shall be the sole remedy for resolving any and all disputes between YOU and US, or OUR representatives." The clause additionally contains a non-exclusive list of disputes "subject to binding arbitration," including

- Any disagreement that a condition in the HOME . . . is a CONSTRUCTION DEFECT and is therefore covered by this LIMITED WARRANTY;

- Any alleged violation of consumer protection, unfair trade practice, or any other statute;

- Any allegation of negligence, strict liability, fraud, and/or breach of duty of good faith, and any other claims arising in equity or from common law;

- Any dispute concerning the issues that should be submitted to binding arbitration; [and]

- Any other claim arising out of or relating to the sale, design or construction of YOUR HOME . . . including, but not limited to any claim arising out of, relating to or based on any implied warranty or claim for negligence or strict liability not effectively waived by this LIMITED WARRANTY.

This is the type of language that federal and Texas courts interpreting arbitration clauses have held to be "extremely broad" and "capable of extensive reach." *See Kirby Highland Lakes*, 183 S.W.3d

11

at 898 (citing *Pennzoil Expl. & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067–68 (5th Cir. 1998)) (noting that clause covering "all disputes . . . *related to*" agreement at issue is "extremely broad" and extends to all disputes that "touch" matters covered by agreement). Indeed, the clause in the Warranty is broader than that at issue in *Kirby Highland Lakes* and *Pennzoil Exploration* because it covers disputes "related to" the home's design or construction and not merely disputes "related to" the Warranty. *Cf. Pennzoil Expl.*, 139 F.3d at 1067–68; *Kirby Highland Lakes*, 183 S.W.3d at 898. We, therefore, compare this "extremely broad" clause with the factual allegations in the Dusings' live petition:

- This is a defective-residential-construction case involving Plaintiffs' home;

- As the general contractor, Toll Brothers constructed and completed the Home in late 2006;

- Plaintiffs experienced significant water infiltration into the residence near the basement, a cold joint in the south wall, and the Juliet balcony;

- Plaintiffs notified Toll Brothers of the problems, but Toll Brothers failed to properly address the issues;

- Plaintiffs were forced to hire an outside contractor to fix the Juliet balcony;

- Then again in October of 2015, Plaintiffs experienced the same significant water intrusion in the basement and cold joint along the south wall;

- At the time Plaintiffs[] purchased the home, they were not aware of the latent problems with the foundation and drainage system nor did they have knowledge of these flooding or water intrusions;

- Toll Brothers was responsible for the design and construction of the foundation, the installation of the French drain, and for waterproofing the concrete walls;

- Toll Brothers failed to properly design and construct the foundation, French drainage system, and waterproofing; [and]

- Toll Brothers negligently hired, trained, and supervised the subcontractors and/or employees who constructed the home.

Given the wide reach of the Warranty's arbitration clause—covering "any disputes . . . related to the design or construction" of the home—we can only conclude that the Dusings' factual allegations—succinctly, that Toll Dallas improperly designed and constructed the home—fall squarely within its scope. Barring the application of a cognizable defense, the Dusings are thus bound to arbitrate their dispute. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227.

### *Did the Dusings meet their burden to prove a defense to the Warranty's arbitration clause?*

The Dusings contend that, even if the Warranty's arbitration clause is enforceable against them and this dispute falls within its scope, they can nonetheless avoid arbitration due to the common-law doctrines of law of the case, judicial estoppel, and misnomer. However, none of these doctrines apply here.

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." *Medical Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see Howlett v. State*, 994 S.W.2d 663, 666 (Tex. Crim. App. 1999) (law-of-the-case doctrine "provides that an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal"). It is a court-made doctrine designed to promote judicial consistency and efficiency by eliminating the need for appellate courts to prepare opinions discussing previously resolved matters. *Duncan v. State*, 151 S.W.3d 564, 566 (Tex. App.—Fort Worth 2004, pet. ref'd). "[W]hen the facts

13

and legal issues are virtually identical, they should be controlled by an appellate court's previous resolution." *State v. Swearingen*, 478 S.W.3d 716, 720 (Tex. Crim. App. 2015). "Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case; but a determination to revisit an earlier decision is within the discretion of the court under the particular circumstances of each case." *Gotham Ins. Co. v. Warren E&P, Inc.*, 455 S.W.3d 558, 562 n.8 (Tex. 2014).

Because we have concluded that a different variety of equitable estoppel is before us than was before us in *Toll Austin*, we determine that the doctrine of law of the case is inapplicable. *See City of New Braunfels v. Carowest Land, Ltd.*, 549 S.W.3d 163, 174 (Tex. App.—Austin 2017, pet. filed) (determining that law-of-the-case doctrine did not preclude appellate court from revisiting its prior conclusions about subject-matter jurisdiction when parties did not raise, and court did not consider, particular doctrine that was raised in subsequent appeal); *Black v. 7-Eleven Convenience Stores*, No. 03-12-00014-CV, 2014 WL 902498, at * 5 (Tex. App.—Austin Mar. 7, 2014, no pet.) (noting that "law of the case," like stare decisis, applies only to questions of law, not questions of fact or mixed questions of fact and law). Therefore, the doctrine of law of the case does not apply in this appeal.

The doctrine of judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage. *Ferguson v. Building Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009). The Dusings contend that the doctrine applies here due to sworn statements in court filings made by the Toll entities that "All of Plaintiffs' claims against Toll Dallas

14

(or Toll Austin) arise solely from either the Agreement of Sale or the Warranty. The Agreement of Sale and the Warranty contain valid and enforceable arbitration clauses." From these statements, the Dusings contend that Toll Dallas knew that "any outcome of [Toll Austin's] motion to compel arbitration would apply to both Toll Austin and Toll Dallas." However, this is not a proper application of the judicial-estoppel doctrine because, as explained above with respect to law of the case, we are presented with a different equitable theory. Toll Dallas's sworn statements that the outcome of Toll Austin's motion to compel would apply equally to it are ineffectual in light of the new equitable theory we address here.

Lastly, the Dusings contend that their "misnomer" of Toll Dallas in their original pleadings—they claim to have "misnamed" Toll Dallas by initially mistakenly suing "Toll Austin"—applies to relieve them of the obligation to arbitrate because Toll Austin acknowledged from the beginning, and Toll Dallas has known all along, that Toll Dallas is the correct defendant and is bound by the *Toll Austin* decision. In the first instance, we note that the Dusings' naming of Toll Austin as the original defendant rather than Toll Dallas—a completely separate, although affiliated, corporate entity—constitutes misidentification rather than misnomer. *See In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam) (explaining that misidentification "arises when two separate legal entities exist and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity" and differs from misnomer, which "occurs when a party misnames itself or another party, but the correct parties are involved"). In any event, the distinction between misnomer and misidentification in this case is immaterial because the Dusings have not advanced a cognizable theory for why their alleged misnomer of the correct party

15

would absolve them of the obligation to arbitrate under the Warranty. Although the Dusings assert that the doctrine of misnomer applies, their explanation of its application does not differ significantly from their contentions about law of the case, which we have already rejected. We conclude, therefore, that the Dusings have not met their burden to prove that they are not bound by the Warranty's arbitration clause due to any of their alleged "defenses."

## CONCLUSION

We reverse the trial court's denial of Toll Dallas's motion to compel arbitration and remand this cause to the trial court for entry of an order compelling the Dusings to arbitrate their disputes with Toll Dallas and abating further court proceedings against Toll Dallas.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Reversed and Remanded

Filed: May 16, 2019

16